# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Jonathan Nieberding ) | |
| 1179 6th Rd ) | |
| Marysville, KS ) | |
| ) | |
| *Plaintiff*, ) | Demand for Jury Trial |
| ) | |
| v. ) | |
| ) | Case No. 12-cv-2353 KHV/DJW |
| Barrette Outdoor Living, Inc. ) | |
| 7830 Freeway Circle ) | |
| Middleburg Heights, Ohio 44130 ) | COMPLAINT – CLASS ACTION |
|     Serve registered agent: ) | |
|     CT Corporation System ) | |
|     112 SW 7th St., Suite 3c ) | |
|     Topeka, KS 66603 ) | |
| ) | |
| *And* ) | |
| ) | |
| Home Depot U.S.A, Inc. ) | |
| 2455 Paces Ferry Road, NW ) | |
| Atlanta, GA 30339-4024 ) | |
|     Serve registered agent ) | |
|     Corporation Service Company ) | |
|     200 S.W. 30th St. ) | |
|     Topeka, KS 66611 ) | |
| ) | |
| *And* ) | |
| ) | |
| John Doe Defendants ) | |
| ) | |
| *Defendants* ) | |

## **COMPLAINT**

Comes Now plaintiff, individually and on behalf of similarly situated plaintiffs, for his petition for damages against Defendants Barrette Outdoor Living, Inc., Home Depot U.S.A., Inc, and John Doe Defendants 1-5 (collectively referred to as "Defendants").

1

1. This is a products liability action arising out of the Traditional and Williamsburg vinyl railing products manufactured, produced, distributed, and/or sold by Defendants. This matter arises out of negligent acts and other acts, errors and omissions, including those for which Defendants are strictly liable, committed by the Defendants against Plaintiff causing Plaintiff to suffer bodily and economic injury. This Court has subject-matter jurisdiction to hear and decide all claims.

2. Plaintiff files this suit pursuant to K.S.A. 60-223, Class Actions. Plaintiff files this action on behalf of himself and all those similarly situated, including all individuals who purchased the same product as manufactured, produced, distributed, and/or sold by Defendants. The class is so numerous that joinder of all members is impracticable. Common questions of law and fact are shared by all similarly situated plaintiffs. Plaintiff's claims are typical of the claims of the class. The defenses are likewise typical. Plaintiff, and class representative, will fairly and adequately protect the interests of the class.

## PARTIES

3. Defendant Barrette Outdoor Living, Inc., is incorporated in the state of Ohio and is registered in the state of Kansas and can be served at CT Corporation System, 112 SW 7th St, Suite 3c Topeka, KS 66603. Defendant is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, vinyl railing, including the Traditional and Williamsburg Pre-Built Vinyl Railing that injured plaintiff(s).

4. Defendant Barrette Outdoor Living, Inc., transacted business and/or committed tortious acts within the state of Kansas. Defendant designs, manufactures, processes, distributes, installs, uses, and/or sels dangerous and/or defective products in Kansas. Defendant placed the

2

defective and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in Kansas from which Plaintiffs' claims arise.

5. Defendant Home Depot U.S.A, Inc. is incorporated in the state of Deleware, headquatered in Atlanta, GA and registered in the state of Kansas and can be served at Corporation Service Company 200 SW 30th St, Topeka, KS 66611. Defendant is engaged in the business of labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, vinyl railing, including the Traditional and Williamsburg Pre-Built Vinyl Railing.

6. Defendant Home Depot U.S.A., Inc. transacted business and/or committed tortious acts within the state of Kansas. Defendant processed, distributed, installed, used, and/or sold dangerous and or defective products in Kansas. Defendant placed the defective and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in Kansas from which Plaintiff's claims arise.

7. At all times pertinent, the true names and addresses of John Doe Defendants 1 - 5 have been and remain unknown despite Plaintiff's reasonable and diligent attempts to discover their names and addresses. It is known that the John Doe Defendants are individuals, partnerships and/or corporations who are or were engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties or related entities, the defective railing system.

8. Plaintiff Nieberding is an individual residing in Marysville, Kansas. Jonathon Nieberding is a "consumer" and has purchased one or more of the Traditional and Williamsburg

3

Pre-Built Vinyl Railing in a "consumer transaction," as those terms are defined in K.S.A. 50-624.  At the time he purchased the product, Jonathon Nieberding was unaware that the product was defective and that the product was not fit for the ordinary purposes for which the product is used in that, when used as reasonably anticipated, the vinyl railing gives way, cracks, splits and fails.

## JURISDICTION AND VENUE

9. Jurisdiction is proper in this Court because there is diversity of citizenship between plaintiffs and defendants, this is a class action and the amount in controversy exceeds $5,000,00.00.  Venue is proper because plaintiffs resides in Marshall County, Kansas and the defendants sell their products and may be properly sues in the State of Kansas.

## GENERAL ALLEGATIONS

10. Whenever reference in this Petition is made to any act, error, omission, representation and/or transaction by Defendants, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents and/or representatives of such Defendants committed, knew of, performed, authorized, ratified and/or directed such act, error, omission, representation and/or transaction on behalf of such Defendants while actively engaged in the scope of their duties as employee and/or agents.

11. The Traditional and Williamsburg vinyl railing products made the subject of this suit, which are manufactured, produced, distributed, and sold by Defendants, are unreasonably dangerous despite the fact that Defendant Barrette advertises their products are designed to be "*safe and secure*", "*keep your family and guests safe*", and "*vinyl railings will require very little maintenance and will not warp, crack, splinter, peel or ever need painting*".

4

12. Defendants failed to disclose, reveal or otherwise provide notice to consumers, including Plaintiff, in Defendants' advertising, packaging or otherwise that these products were defective and that the products are not fit for the ordinary purposes for which the products are used in that, when used as reasonably anticipated, the vinyl railings give way, crack, splits and fail.

## Class Action Allegations

13. This action is also brought by plaintiffs as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf all persons in Kansas who, within the past 4 years, purchased Traditional and Williamsburg vinyl railing products that are defective and unfit for the ordinary purpose for which the products are used.

14. Pursuant to FRCP 23(a), the class is composed of at least hundreds, if not thousands of members. The number of class members is so large that the joinder of all its members is impracticable.

15. Pursuant to FRCP 23(a), Plaintiff's claims are typical of the claims of the members of the class. Plaintiff is an adequate representative of the members of the class.

16. Pursuant to FRCP 23(g), plaintiff has secured competent counsel, experienced in complex class action litigation, and intend to prosecute this action vigorously.

17. Pursuant to FRCP 23(a), plaintiff's interests are not antagonistic to, or in conflict with, the interests of the class.

18. Pursuant to FRCP 23(b)(3), a class action is superior to the other available methods for the fair and efficient adjudication of this controversy because, among other things, joinder of all members of the class is impracticable and the named plaintiff's claims are typical of all class and members. Furthermore, as the injury suffered by some of the individual members

5

of the class may be relatively small, the expense and burden of individual litigation makes it impracticable for members of the class individually to enforce their rights. Plaintiff knows of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

19. Numerous common issues of law and fact exist in this matter within the meaning of Rule 23(a) of the Federal Rules of Civil Procedure, and the common issues predominate over questions affecting only individual members. These issues include, but are not limited to, whether the defendants breached the warranty of merchantability by their sale of products that are defective and unfit for the ordinary purposes for which the products are used, whether the defendants engaged in conduct in violation of the Kansas Consumer Protection Act, and whether the defendants were unjustly enriched from the sale of these products.

## Count I – Breach of Warranty

20. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 19.

21. By their actions described above, defendants breached the implied warranty of merchantability, set forth in K.S.A. § 84-2-314 which provides, to wit:

> **84-2-314. Implied warranty: Merchantability; usage of trade.** (1) Unless excluded or modified (section 84-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> (2)    Goods to be merchantable must be at least such as
>     (a)    pass without objection in the trade under the contract description; and
>     (b)    in the case of fungible goods, are of fair average quality within the description; and
>     (c)    are fit for the ordinary purposes for which such goods are used; and

        (d)    run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
        (e)    are adequately contained, packaged, and labeled as the agreement may require; and
        (f)    conform to the promises or affirmations of fact made on the container or label if any.
(3)    Unless excluded or modified (section 84-2-316) other implied warranties may arise from course of dealing or usage of trade.

22.    Defendants, as "seller[s]" and "merchant[s]," as those terms are defined in the Kansas Uniform Commercial Code – Sales, K.S.A. §§ 84-2-101, et seq., have and continue to sell products that are not merchantable because, among other reasons, the products are not fit for the "ordinary purposes for which such goods are used" and/or do not conform to the promises or affirmations of fact made by Defendants.

23.    As a result of the defendants' breach of the warranty of merchantability, the plaintiff and the members of the class have suffered damages including but not limited to, the purchase price paid for the vinyl railing products by reason that the value of the products purchased was less than the value they would have had if they had been as warranted.

24.    The plaintiff and the members of the class are entitled to recover damages equal to at least the amounts paid for the products and are entitled to all other remedies against defendants allowed by law including, but not limited to, those found in the Kansas Uniform Commercial Code – Sales, K.S.A. §§ 84-2-101, et seq.

## Count II – Unfair Trade Practices

25.    Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 24.

26.    The Kansas Consumer Protection Act, K.S.A. §§ 50-623 et seq. prohibits the use of any "deceptive" or "unconscionable" act or practice in connection with a consumer

transaction by a supplier ("unfair trade practices"), and provides that an aggrieved consumer may seek private remedies for, among other things, damages and may do so by class action.

27.  K.S.A. § 50-626 provides, in pertinent part:

> **50-626. Deceptive acts and practices**. (a) No supplier shall engage in any deceptive act or practice in connection with a consumer transaction.   (b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled:
> (1)     Representations made knowingly or with reason to know that:
>     (A)     Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;
>     (B)     the supplier has a sponsorship, approval, status, affiliation or connection that the supplier does not have;
>     (C)     property is original or new, if such property has been deteriorated, altered, reconditioned, repossessed or is second-hand or otherwise used to an extent that is materially different from the representation;
>     (D)     property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;
>     (E)     the consumer will receive a rebate, discount or other benefit as an inducement for entering into a consumer transaction in return for giving the supplier the names of prospective consumers or otherwise helping the supplier to enter into other consumer transactions, if receipt of benefit is contingent on an event occurring after the consumer enters into the transaction;
>     (F)     property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; or
>     (G)     use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof or substantiation represented to exist;
> (2)     the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;
> (3)     the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact;

28.  Defendants have engaged in acts and practices which are "deceptive" as that term is described in K.S.A. § 50-626, in that, among other things, defendants engaged in consumer transactions wherein products were sold to plaintiff and other consumers that, when used as reasonably anticipated, give way, crack, split and fail; defendants did so while willfully failing

8

and omitting to disclose, state or warn plaintiffs and other consumers of such fact which was material to the consumer transactions.

29.     Defendants also misrepresented that their railing products were safe and secure, by advertising and making declarations including, their railing products were "*safe and secure*", will "*keep your family and guests safe*", and that the "*vinyl railings will require very little maintenance and will not warp, crack, splinter, peel or ever need painting*".

30.     K.S.A. § 50-627 provides, in pertinent part:

**50-627. Unconscionable acts and practices.** (a) No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction.
(b)     The unconscionability of an act or practice is a question for the court. In determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following that:
        (1)     The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;
        (2)     when the consumer transaction was entered into, the price grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by similar consumers;
        (3)     the consumer was unable to receive a material benefit from the subject of the transaction;
        (4)     when the consumer transaction was entered into, there was no reasonable probability of payment of the obligation in full by the consumer;
        (5)     the transaction the supplier induced the consumer to enter into was excessively onesided in favor of the supplier;
        (6)     the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment; and
        (7)     except as provided by K.S.A. 50-639, and amendments thereto, the supplier excluded, modified or otherwise attempted to limit either the implied warranties of merchantability and fitness for a particular purpose or any remedy provided by law for a breach of those warranties.

31.     Defendants have engaged in acts which are "unconscionable" as that term is described in K.S.A 50-627 in that, among other things, Defendants engaged in consumer

9

transaction wherein products were sold to plaintiff and other consumers that, when used as anticipated, give way, crack, split and fail; in doing so, defendants took advantage of plaintiff's and other consumers' ignorance of, among other things that, when used as anticipated, give way, crack, split and fail.

32. As a result of the defendants' unfair trade practices, plaintiffs and the members of the class have suffered damages, and are entitled to recover those damages and all costs of this action, including attorney fees and costs, from the defendants under the provisions of the Kansas Consumer Protection Act, K.S.A. §§ 50-623, et seq.

33. Pursuant to K.S.A. §50-634, the plaintiff and the members of the class are also entitled to an injunction enjoining the Defendants' continued use of these unfair trade practices, including an injunction against the continued sale of products that, when used as anticipated, give way, crack, split and fail.

## Count III – Unjust Enrichment

34. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 33.

35. Plaintiff and the members of the class purchased products of the Defendants that they would not have purchased had they known that the products, when used as anticipated, give way, crack, split and fail.

36. The Defendants were therefore unjustly enriched at the expense of and to the detriment of the plaintiff and the class.

37. Plaintiff and the class are therefore entitled to restitution from the Defendants, and seek an order required the Defendants to disgorge all profits, benefits and other compensation the defendants obtained from the sale of these products.

## COUNT IV -- Strict Liability in Tort -- Design Defect

38. Plaintiff incorporates by reference all allegations set forth paragraphs 1 through 12.

39. Defendants manufactured and/or supplied the railing products in question within the ordinary course of their businesses.

40. In June 2010, Plaintiff Nieberding purchased a Williamsburg vinyl railing system from Defendant Home Depot in Manhattan, Kansas. Thereafter, Plaintiff installed the railing system on a second story balcony of his home. Plaintiff installed the railing system per the manufacturer's, Defendant Barrette, instructions.

41. On or about June 9, 2011, the railing system gave way, cracked, split and failed. As a result, Plaintiff fell from his second story balcony resulting in a scaphoid fracture on his left wrist, among other injuries.

42. Specifically, the vinyl post jacket and/or vinyl insert that connects/and holds the steel railing to the post warped, cracked, split and otherwise failed. Nothing, other than the vinyl jacket/insert, held the steel railing in place – an accident waiting to happen.

43. Defendants knew or should have known of the dangerous nature of the railing system and its likelihood to fail at the time of its design, manufacture, sale, testing, transportation, distribution, supply, and use causing Plaintiff's subsequent injury. Notwithstanding, Defendants failed to take safety precautions to prevent injury to Plaintiff and failed to warn and/or instruct Plaintiff and others of the defective and unreasonably dangerous nature of said product.

44. Defendants' defective and unreasonably dangerous product directly and proximately caused injuries to plaintiff. Plaintiff has suffered and continues to suffer physical

11

pain, physical limitation, and mental and emotional distress.  In addition, Plaintiff has suffered and will suffer loss of wages and/or earning capacity, and has expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

45. Defendants' product was used the manner reasonably anticipated by Defendants and installed per Defendants' instructions.

46. At the time of the design, manufacture, processing, packaging, distribution, sale and/or use of Defendants' product, said product was defective as designed because of its propensity, among other things, to crack, split, warp, splinter and otherwise fail to provide a safe railing system, resulting in injury.

47. As a result of Defendants' product's propensity to cause injury, as described above, Defendants' product was unreasonably dangerous and defective when put to the use anticipated by Defendants.

48. As a direct and proximate result of the dangerous and defective condition of Defendants' product and Defendants' failure to warn of the dangers thereof, Plaintiff has developed severe, permanent, physical injury, including but not limited to a fractured scaphoid on his left wrist. Plaintiff has suffered and continues to suffer physical pain, mental and emotional distress.  In addition, Plaintiff has suffered and will suffer loss of wages and/or earning capacity and has expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

49. At the time of Defendants' design, manufacture, processing, distribution, sale and/or use of the railing products, Defendants knew of the dangerous condition of said product and supplied it with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries of the type caused to the Plaintiff and thereby showed complete indifference to and/or conscious disregard for the safety of others.  Defendants' conduct

which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and punitive and/or exemplary damages should be assessed against Defendants.

50. WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, for actual and punitive damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT V – Strict Liability in Tort -- Failure to Warn

51. Plaintiff incorporates by reference all allegations set forth in paragraphs 1 through 12 and paragraphs 39 through 50.

52. Defendants designed, manufactured, processed, packaged, distributed, marketed, sold and supplied, and labeled the traditional and Williamsburg railing products at issue, without including and/or making adequate instructions on the use of the product to reduce and/or eliminate the dangerous vinyl components thereof, and/or without warnings that the product would crack, split, splinter, warp and otherwise fail and become dangerous and cause injury.

53. As a result of Defendants' failure to adequately instruct on use and/or avoidance or to warn of the dangerous characteristics of the product, said product was defective and unreasonably dangerous when put to the use reasonably anticipated by Defendants.

54. As a direct and proximate result of the dangerous and defective condition of Defendants' product and Defendants' failure to instruct and/or warn of the dangers thereof, Plaintiff has developed severe, permanent, and physical damage, including but not limited to a fractured scaphoid. Plaintiff has suffered and continues to suffer physical pain, mental and emotional distress. In addition, Plaintiff has suffered and will suffer loss of wages and/or earning capacity and has expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

55. At the time of their design, manufacture, processing, packaging, distribution, marketing, sale, supply and/or use of the railing products at issue, Defendants knew of the dangerous condition of said product and supplied it with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries of the type caused to the Plaintiff and thereby showed complete indifference to and/or conscious disregard for the safety of others.  Defendants' conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and punitive and/or exemplary damages should be assessed against Defendants.

56. WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, for actual and punitive damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable in the premises.

### COUNT VI -- Negligence

57. Plaintiff incorporates by reference all allegations set forth in paragraphs 1 through 12 and paragraphs 39 through 56.

58. Defendants designed, manufactured, distributed, tested, sold, applied, used and/or supplied the traditional and Williamsburg railing products at issue.

59. Defendants each held itself out as a corporation capable of reasonably and prudently developing, manufacturing, marketing, supplying, testing, distributing, applying, using, supplying and the railing products at issue and therefore had the duty to have and exercise the knowledge of an expert on such product.

60. Defendants knew or should have known that the railing system created an unreasonable risk of bodily harm, including the risk of falling from balconies and fracturing bones and other severe injuries.

61. As designers, manufacturers, processors, packagers, distributors, marketers, sellers, users, appliers and suppliers of the railing products at issue, Defendants had a duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of designers, manufacturers, processors, packagers, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation, the duty to test their products; the duty to acquire and maintain the knowledge of an expert; the duty to design, manufacture, process, distribute, market, sell, and/or supply their product free from defects and/or latent defects; the duty to adequately warn of product defects and/or hazards, which duty continued even after the sale of said products; and the duty to market, advertise, sell and supply roofing adhesive products with adequate information and warnings about the risk of failure and propensity to cause the serious injuries.

62. Defendants failed to use due care under the circumstances and were thereby breached their duties as set forth above and were careless and negligent in the performance of their said duties to Plaintiff.

63. As a direct and proximate result of the dangerous and defective condition of Defendants' products and Defendants' failure to warn of the dangers thereof, Plaintiff has developed severe, permanent, and physical injury, including but not limited to a fractured scaphoid. Plaintiff has suffered and continues to suffer physical pain, mental and emotional distress. In addition, Plaintiff has suffered and will suffer loss of wages and/or earning capacity

and has expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

64.	At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the railing products at issue, Defendants knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for making any warning, instruction, or other precaution to prevent injuries of the type caused to the Plaintiff and thereby showed complete indifference to and/or conscious disregard for the safety of others.  Defendants' conduct which caused this damage was willful, wanton, and/or in reckless disregard for the rights of Plaintiff and punitive and exemplary/or damages should be assessed against Defendants.

65.	WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, for actual and punitive damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable in the premises.

## COUNT IV
### Negligently Supplying Dangerous Instrumentalities

66.	Plaintiff incorporates by reference all allegations set forth in paragraphs 1 through 12 and paragraphs 39 through 65.

67.	Defendants supplied the traditional and Williamsburg railing products for use as deck, balcony and other railing purposes.

68.	The traditional and Williamsburg railing products crack, warp, split, fail, and are therefore dangerous when put to a reasonably expected use.

69.	The railing system at issue was put to a reasonably expected use by Plaintiff when it was installed on a second story balcony at his home.

70. Defendants had no reason to believe that those for whose use the railing products were supplied would realize its dangerous condition.

71. Defendants knew or had information from which Defendants, in the exercise of ordinary care, should have known of such dangerous condition.

72. Defendants failed to adequately warn Plaintiff or other bystanders of the dangerous condition.

73. Defendants failed to use due care under the circumstances and were thereby negligent in the performance of their duties to Plaintiff.

74. WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, for actual and punitive damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable in the premises.

## DEMAND FOR JURY TRIAL OF ALL ISSUES

75. Plaintiffs in the above-entitled cause demand a trial by jury on all justiciable issues and claims asserted herein and/or hereafter by the Plaintiffs and/or Defendants.

## DESIGNATED PLACE OF TRIAL

76. Plaintiff, by and through counsel, hereby designates the United States District Court for the District of Kansas at Kansas City as the place of trial.

Dated: June 5, 2012

Respectfully submitted,

THE POPHAM LAW FIRM, P.C.

By: \_\_\_/s/ Wm. Dirk Vandever_____
    Wm. Dirk Vandever, MO # 77931
    Mark Schloegel MO #58870
    712 Broadway, Suite 100
    Kansas City, Missouri 64105
    Telephone: (816) 221-2288
    Fax: (816) 221-3999
    dvandever@pophamlaw.com
    mschloegel@pophamlaw.com

    John M. Klamann
    Klamann & Hubbard, PA
    929 Walnut Street, Suite 800
    Kansas City, MO 64105
    Telephone:    (816) 421-2626
    Facsimile:      (816) 421-8686
    jklamann@kh-law.com

    Ronald P. Pope, #11913
    Ralston Pope & Diehl, LLC
    2913 SW Maupin Lane
    Topeka, KS 66614
    Telephone: (785) 273-8002
    Facsimile: (785) 273-0744
    ron@ralstonpope.com