## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JONATHAN NIEBERDING and
FREDERICK ALOYSIUS NIEBERDING,

      Plaintiffs,

v.

BARRETTE OUTDOOR LIVING, INC. and
HOME DEPOT USA, INC.,

      Defendants.

Case No. 12-CV-2353-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiff Frederick Aloysius Nieberding filed this motion for class certification (Doc. 130), seeking to represent a class of purchasers of outdoor railing products designed and sold by defendants Barrette Outdoor Living, Inc. and Home Depot USA, Inc. Plaintiff alleges that the railing products included defective plastic brackets which harmed all members of the proposed class by causing them to pay more for the products than they were worth. For the reasons explained below, the Court grants plaintiff's motion in part and denies it in part.

### I.  Factual Background

Defendant Barrette designs prefabricated vinyl guardrails for outdoor use, and Home Depot sells the Barrette railing products to consumers. The railing is sold in sections of varying lengths and consists of a series of vertical balusters or bars held in place by horizontal rails at the top and bottom. Each railing product typically includes small brackets made out of PVC that are used to connect the horizontal rails at the top and bottom of the product to the structure on which the railing is installed. For the railing products at issue here, the top bracket is shaped like a bread loaf and the bottom bracket is shaped like a rectangle.

1

This lawsuit was triggered by an injury to plaintiff Jonathan Nieberding.  Jonathan, the son of plaintiff Frederick Nieberding, seeks to recover on certain claims in plaintiffs' Third Amended Complaint, but not on those claims on which plaintiff Frederick Nieberding seeks class certification.  For purposes of this motion, the Court will refer to Frederick Nieberding as "plaintiff" and Jonathan Nieberding as "Jonathan."

Plaintiff purchased the Barrette railing product at Home Depot and installed it, using the allegedly defective brackets, on a second-story deck at his home.  According to plaintiff and Jonathan, on June 9, 2011, Jonathan fell into the railing and the railing broke, causing Jonathan to fall two stories to the ground and suffer an injury.  Jonathan alleges that the top, bread loaf-shaped bracket broke, which caused his injury.

On behalf of the putative class, plaintiff asserts that the top, bread loaf-shaped bracket that connects the railing to a permanent structure is inherently defective in a way that is common to all class members.  Specifically, plaintiff alleges that (1) the PVC used to create the bracket is defectively brittle; (2) the dimensions and shape of the bracket are inadequate to withstand reasonably anticipated forces; and (3) the screws used to secure the bracket to the railing and the structure to which the railing is connected are inadequate to withstand reasonably anticipated forces.  Plaintiff seeks to recover damages based on the difference between the railing products as warranted and their value with the defective brackets.

## II.  Legal Standard

The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only.  *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).  When making class certification decisions, the Court has considerable discretion.  *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013) (because class certification involves

"intensely practical considerations," decision lies within discretion of trial court); *see also Bateman v. Am. Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (district courts in best position to consider most fair and efficient procedure for litigation); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 555 (S.D. Cal. 2012) (quoting *Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999)) (class action certifications to promote compliance with consumer protection laws "desirable and should be encouraged").  A district court must conduct, however, a "rigorous analysis" to determine whether the putative class satisfies the requirements of Rule 23.  *Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Dukes*, 131 S. Ct. at 2551.  The elements of class certification are (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation, plus one of the requirements of Rule 23(b)(1) through (3).  Fed. R. Civ. P. 23.

Plaintiff seeks certification under Rule 23(b)(3).  Rule 23(b)(3) requires plaintiff to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Rule 23 does not set forth a mere pleading standard.  *Comcast*, 133 S. Ct. at 1432 (quoting *Dukes*, 131 S. Ct. at 2551).  As the party requesting class certification, plaintiff bears the burden of "affirmatively demonstrat[ing]" compliance with these requirements.  *Id.* (quoting *Dukes*, 131 S.Ct. at 2551).  Plaintiff "must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551.  In determining whether plaintiff has met his burden, the Court "must accept the substantive allegations of the complaint as true," but it does not "blindly rely on conclusory allegations which parrot Rule 23."  *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004) (quoting *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999)).  The Court is not limited to the

pleadings but may "probe behind the pleadings" and examine the facts and evidence in the case. *Tabor*, 703 F.3d at 1227-28 (quoting *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 160 (1982)); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (rigorous analysis requires judgments about the persuasiveness of evidence). Actual, not presumed, conformance with Rule 23(a) is required. *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon,* 457 U.S. at 160).

This "rigorous analysis" will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim." *Id.* But the Court should not conduct a mini-trial to determine if the class could actually prevail on the merits of their claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95, 1201 (2013); *Dukes,* 131 S. Ct. at 2552 n.6.

## III. Discussion

### A. Preliminary Matters

Plaintiff seeks certification of three claims in his Third Amended Complaint. Specifically, plaintiff alleges that defendants (1) breached the implied warranty of merchantability under K.S.A. § 84-2-314; (2) willfully omitted a material fact about the railing products in violation of the Kansas Consumer Protection Act ("KCPA") under K.S.A. § 50-626; and (3) committed unconscionable acts in violation of the KCPA under K.S.A. § 50-627. Plaintiff alleges that all putative class members have suffered the same injury—economic damages resulting from the difference between the railing products as warranted and their value in light of the allegedly defective brackets.

Defendants have filed separate motions for summary judgment (Docs. 145, 148) against all three of plaintiff's class claims. Plaintiff argues that these motions are premature, because the parties agreed to conduct discovery only on issues related to class certification, leaving discovery on the merits until after the Court rules on certification. Plaintiff argues that he cannot

adequately respond to defendants' motions until after full discovery and requests that defendants' motions be "summarily denied." (Doc. 147 at viii)

Fed. R. Civ. P. 56(b) provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Thus, defendants' motions are not "premature" such that dismissal is automatically warranted. However, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery . . . ." Fed. R. Civ. P. 56(d).

The Court wishes to make clear that it has yet to decide whether plaintiff has "specified reasons" why he cannot present facts essential to justify his opposition to defendants' motions; nor has it concluded whether defendants are entitled to summary judgment on plaintiff's class claims. The parties should recognize that this Order does not address the pending motions for summary judgment.

With his Reply to Home Depot's Opposition to Motion for Class Certification (Doc. 137), plaintiff attached, for the first time, an affidavit from his expert, James Stoffer. Defendants filed separate motions to strike the Stoffer affidavit or, in the alternative, motions for leave to file a surreply (Docs. 138, 141). Defendants argue that the affidavit is improper because it was presented for the first time in plaintiff's reply and because plaintiff did not identify Stoffer in his initial disclosures or in response to discovery requests asking plaintiff to identify his experts.

The Court finds the requested relief unnecessary. In the affidavit, Stoffer states that he believes the plastic brackets at issue are defective. As explained below, whether the brackets are defective is a strictly merits-based inquiry that is not relevant to the class certification analysis.

As a result, the Court disregards the Stoffer affidavit in ruling on plaintiff's motion. The Court denies defendants' motions (Docs. 138, 141) as moot, without prejudice to defendants' ability to reassert a similar challenge during the merits phase of this case.

### B. Class Definition

Plaintiff proposes the following class definition:

> All individual persons, corporations, partnerships, associations and other entities who, during the period from June 5, 2008, to the present, purchased in the State of Kansas directly from Home Depot, U.S.A., Inc., one or more guardrail products supplied by Barrette Outdoor Living, Inc., that included the plastic brackets (defined below). The plastic brackets are the breadloaf style 1291 (white) and 1292 (wicker) upper guardrail brackets pictured below.

> Excluded from the Class are those persons who have lawsuits pending against, or who have settled their claims against, any one or more of the defendants for the same or similar claims as set forth herein, members of the Kansas state judiciary, Defendants, Defendants' employees, any entities in which either Defendants have a controlling interest, and the parents, subsidiaries, affiliates, and their officers and directors of Defendants and the members of their immediate families. Also excluded from the class are those individual persons, corporations, partnerships, associations and other entities who, after purchasing one or more products that included the plastic brackets, subsequently sold or otherwise relinquished possession of the product(s).

Defining the class is critically important because it identifies who is (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the best notice practicable in an action certified under Rule 23(b)(3). *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 504 (D. Kan. 2014). Therefore, the definition must be precise, objective, and presently ascertainable. *Id.* That is, one must be able to apply the class definition to determine who is and who is not a member of the class.

Some circuit courts (although not the Tenth Circuit) have required courts to find that the proposed class can be "ascertained in an economical and administratively feasible manner." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d. Cir. 2013). This means that "a trial court should ensure that class members can be identified without extensive and individualized fact-finding or

mini-trials, a determination which must be made at the class certification stage." *Id.* (internal quotations omitted).

In this case, defendants argue that the class is not ascertainable because "there is no way to identify the in-store purchasers of the Railing System based on Home Depot's business records." (Doc. 135 at 24)  Defendants claim that because Home Depot does not keep records of the identities of customers who bought products with the defective brackets, "[o]n that basis alone, the Court should deny class certification." (Doc. 135 at 24)

Essentially, then, defendants argue that a retailer who sells defective products could immunize itself from class certification by merely choosing not to keep records of the people who bought the defective product.

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

Myriam Gilles, *Class Dismissed: Contemporary Judicial Hostility to Small-Claims Consumer Class Actions*, 59 DePaul L. Rev. 305, 305 (2010).  In a consumer class action where the potential recovery for each class member is relatively small, a class action is the only realistic option for recovery.  Because sellers of the products like the brackets here are unlikely to keep perfect records of every individual who purchased the product in question, alternative methods to identify class members must be permitted.

Here, plaintiff proposes a feasible way to determine class membership:  "simply requiring that all class members complete a claim form with proof of purchase (i.e., receipt, photos, etc.), which is required by Barrette's Warranty program and is almost universally done in class action cases." (Doc. 137 at 17)  The Court finds that plaintiff's proposed method of ascertaining the

class is reasonable; it will not require the individualized mini-trials that defendants claim.  The putative class includes only those purchasers who still possess products that include the allegedly defective brackets.  Determining whether each potential claimant still possesses the brackets would be a relatively simple procedure.

For similar reasons, the Court rejects Home Depot's second argument that the class is not ascertainable.  Plaintiff asserts claims for breach of the implied warranty of merchantability and for violations of the KCPA.  The class definition includes "individual persons" but also "corporations, partnerships, associations, and other entities . . . ."  While any entity can sue for breach of the implied warranty, only "consumers" may recover under the KCPA.  *See* K.S.A. § 50-624(b).  KCPA "consumers" do not include "corporations, partnerships, associations, and other entities."  *Id.*  Because determining which class members are consumers who may recover for KCPA violations potentially requires individualized fact finding, Home Depot argues that the class is not ascertainable.  However, like the fact finding required to determine whether each putative class member still possesses one of the subject products, determining whether the purchaser was an individual or business entity also would be a relatively simple endeavor.

As a result, the Court finds that the class definition is sufficiently ascertainable.  The Court also finds that the class definition is precise and objective.  Thus, the Court next proceeds to evaluate whether a class action is proper under the Rule 23 requirements.

### C.  Rule 23(a) Requirements

The party requesting class certification must demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims and defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative party will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### 1. Numerosity

Rule 23(a)(1) requires plaintiff to show that "the class is so numerous that joinder of all members is impracticable." Numerosity requires examination of the specific facts of each case and imposes no absolute limitations. *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 667 (D. Kan. 2013). Plaintiff must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved. *Bennett*, 298 F.R.D. at 504. Here, the parties have stipulated that between September 1, 2008, and August 31, 2012, Home Depot sold approximately 2,817 units of the railing products that included the brackets and approximately 4,150 bracket kits. The parties also stipulated that at least 233 individuals purchased the railing or bracket kits during the class period. A class of at least 233 people is sufficiently large that joinder of all members is impracticable.

Barrette argues that plaintiff cannot satisfy the numerosity requirement because Home Depot cannot accurately determine the number of purchasers of the railing products at issue. Apparently, Home Depot tracks sales data for its products by market rather than by state. The Kansas City market includes stores in both Kansas and Missouri, so Home Depot cannot determine precisely the number of units sold in Kansas. However, numerosity does not require plaintiff to establish the precise number of class members, only that the class is sufficiently numerous. The parties have stipulated that at least 233 people purchased products that included the subject brackets, which makes joinder impracticable here. The Court finds that plaintiff has satisfied the numerosity requirement.

## 2.   Commonality

Rule 23(a)(2) requires plaintiff to show that "questions of law or fact are common to the class."  Commonality requires plaintiff to demonstrate that the class members have "suffered the same injury." *Dukes*, 131 S. Ct. at 2551.  In other words, the "claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.*

Here, plaintiff alleges that defendants harmed all putative class members by selling them products that included defective brackets.  A quick review of the elements of plaintiff's claims demonstrates that this question is common to all members of the putative class.  To prove a breach of the implied warranty of merchantability under K.S.A. § 84-2-314(2)(c), "the buyer must show the goods were defective and the defect existed at the time of the sale." *Hodges v. Johnson*, 199 P.3d 1251, 1258 (Kan. 2009).  To prove omission of a material fact under K.S.A. § 50-626(b)(3), plaintiff must show that defendants willfully omitted a material fact—here, that the brackets were defective. *Williamson v. Amrani*, 152 P.3d 60, 73 (Kan. 2007), *superseded by statute on other grounds as noted in Kelly v. VinZant*, 197 P.3d 803, 811 (Kan. 2008).  When evaluating whether conduct is unconscionable under K.S.A. § 50-627, courts consider whether the sale price of the product at issue grossly exceeded the price at which similar products were readily obtainable and whether the consumer was able to receive a material benefit from the subject of the transaction. *See Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 314 P.3d 852, 867 (Kan.

2013).  Plaintiff argues that defendants' conduct was unconscionable because it sold a defective product.

Thus, all three of plaintiff's claims depend on whether the brackets were defective. Because plaintiff's claims turn on the existence of a defect, determining that question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.  It is uncontested that the brackets sold during the class period have not changed in any material way.  The Court concludes that the issue of whether the brackets were defective is common to the entire class.

Defendants frequently allege that there is little, if any, evidence that the subject brackets are defective.  For example, Home Depot argues that "plaintiff must provide evidence demonstrating that there is at least some reasonable basis on which the Court could conclude that all of the Brackets are defective."  (Doc. 135 at 27)  Defendants misunderstand the role of the merits of a plaintiff's claims at the class certification stage.

Class certification is appropriate if the Court finds, after conducting a "rigorous analysis," that the requirements of Rule 23 have been met.  *Dukes*, 131 S. Ct. at 2551.  The Rule 23 analysis often will entail some overlap with the merits of the plaintiff's underlying claim.  *Id.* However, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013).

Here, the alleged defect is a common issue for all members of the putative class.  The bracket has not changed over the class period; therefore, plaintiff's ability to prove the existence of a defect is a central issue that is common to all putative class members' claims.  *See Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 799 (7th Cir. 2013) ("Sears argued that most members of

the plaintiff class had not experienced any mold problem.  But if so, we pointed out, that was an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate Sears—a course it should welcome, as all class members who did not opt out of the class action would be bound by the judgment.").  The Court need not reach the ultimate question on the merits of the claims—the brackets' defectiveness, or not—to decide the commonality touchstone of the Rule 23 analysis.

Barrette argues that plaintiff's allegations necessarily involve questions concerning each individual class member's purchase transaction.  According to Barrette, the "representations, reliance, and notice required to be proved by each class member will differ substantially depending on the circumstances of each member's purchase transaction."  (Doc. 134 at 25)

However, the commonality inquiry "requires the Court to find only whether common questions of law or fact exist; unlike Rule 23(b)(3), such questions need not predominate under this element."  *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 281 (D. Kan. 2010).  As few as one common question can suffice.  *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013).  Here, plaintiff has posed a question common to all class members about whether the brackets are defective; he has therefore satisfied the commonality requirement of Rule 23.  The Court will address Barrette's arguments that individual issues predominate when it discusses that aspect of Rule 23(b)(3), below.

### 3.  Typicality

Rule 23(a)(3) requires the claims of plaintiff to be typical of the claims of the class they seek to represent.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010).  The test of typicality is whether all class members are at risk of being subjected to the same harmful

practices, regardless of any class member's individual circumstances. *Id.* at 1198-99. The interests and claims of the named plaintiff and class members need not be identical to satisfy typicality; so long as the claims of the named plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. *Id.* The commonality and typicality requirements of Rule 23(a) tend to merge. *Dukes*, 131 S. Ct. at 2551 n.5. "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

Here, plaintiff's legal and remedial theories are identical to those of the putative class. Plaintiff alleges that defendants sold him a defective bracket which is worth less than what plaintiff paid for it. If plaintiff's allegations are true, the class has suffered the same injury as plaintiff. Nevertheless, Barrette and Home Depot allege numerous "individual circumstances" that they argue defeat typicality. For instance, defendants argue that plaintiff installed the railing product improperly, without the help of a professional, and that the circumstances surrounding the harm—plaintiff's son crashing into the railing—present a sufficiently different fact situation such that typicality does not exist. However, none of these factual differences bear on the common inquiry required by plaintiff's theory of defect: whether the brackets were defective when sold. Thus, they do not foreclose typicality. Because the claims of plaintiff and the class members are based on the same legal theory, the Court finds that plaintiff's claims are typical of the class.

### 4. Adequacy of Representation

Rule 23(a)(4) requires named plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class."  Determining adequacy of representation turns on two questions:  (1) whether the named plaintiff and his counsel have any conflicts of interest with other class members and (2) whether the named plaintiff and his counsel will prosecute the action vigorously on behalf of the class.  *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. at 671.  Minor conflicts among class members do not defeat certification; to defeat class certification, a conflict must be "fundamental" and go to specific issues in controversy.  *Id.* A fundamental conflict exists where some class members claim to have been harmed by conduct which resulted in a benefit to other class members.  *Id.*  In such situations, the named representative cannot adequately represent the interests of the class because their interests actually or potentially antagonize or conflict with interests and objectives of other class members.  *Id.*

Home Depot argues that plaintiff has a conflict of interest because plaintiff and Jonathan Nieberding assert personal injury claims, in addition to the class claims, in their Third Amended Complaint.  According to Home Depot, any recovery on the personal injury claims likely and greatly would outweigh plaintiff's recovery on the class claims.  This, Home Depot contends, could tempt plaintiff to accept an inadequate settlement offer on the class claims in exchange for a larger settlement for his son on the personal injury claims.  In addition, Barrette argues that plaintiff lacks credibility because his allegation in the Third Amended Complaint that he installed the railing product per Barrette's instructions contradicts his later deposition testimony in which he admitted he did not follow every instruction.

First, the Court does not believe that the personal injury claims create the type of "fundamental" conflict that renders plaintiff unable to serve as class representative. *Id.* Plaintiff seeks certification only of economic damages claims and the Court would review any class settlement for fairness. Second, the Court finds that minor discrepancies in plaintiff's pleadings and his deposition testimony do not render him unfit to serve as class representative. Finally, the Court concludes, and defendants do not dispute, that class counsel will fairly and adequately protect the interests of the class members. The Court finds that plaintiff is an adequate representative for the proposed class.

### D.  Rule 23(b)(3) Requirements

In addition to the requirements under Rule 23(a), plaintiff must affirmatively demonstrate that the class satisfies the requirements for one of the types of class actions listed in Rule 23(b). Here, plaintiff seeks class certification under Rule 23(b)(3).

To certify a class under Rule 23(b)(3), plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors pertinent to this finding include:

>  (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
>  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>  (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

These factors weigh in favor of certification.  Class members have little interest in individually controlling the prosecution of separate actions because the amount at stake for each individual class member is small relative to the cost of maintaining a separate action.  The parties have not suggested any similar litigation and the Court is unaware of any.  Finally, the class encompasses only Kansas purchasers and therefore Kansas is an appropriate forum for the class.

### 1.  Predominance

In addition, a review of the questions of law or fact presented by the claims on which plaintiff seeks certification show that common issues predominate.  As discussed in the commonality section above, plaintiff's core contention—that the brackets at issue are defective—is common to the class and common evidence will prove or disprove that assertion. The Court now turns to analyze plaintiff's three theories of liability.

### a.  Implied Warranty of Merchantability

Under K.S.A. § 84-2-312(c), a buyer seeking to establish a breach of the implied warranty of merchantability must prove the ordinary purpose of the type of goods involved and that the particular goods were not fit for that purpose.  *Hodges v. Johnson*, 199 P.3d 1251, 1258 (Kan. 2009).  This requirement has been interpreted to mean that the buyer must show that the goods were defective, that the defect was present when the goods left the manufacturer's control, and that the defect caused the injury sustained by the plaintiff.  *Id.*

Home Depot argues that determining whether the railing products sold with the brackets were not fit for the ordinary purpose of the type of goods involved requires an individualized inquiry because plaintiff must show "each purchaser's intended and actual use of the product." (Doc. 135 at 18)  This argument misapprehends the governing legal standard for merchantability claims.  The purpose of the implied warranty of merchantability is to protect the "normal

16

commercial expectations" of the buyer.  *Id.*  As a result, whether the allegedly defective bracket rendered the railing products unfit for their ordinary purpose is judged objectively, and not on each purchaser's individual expectations.  Breach of the implied warranty is therefore susceptible to proof by common evidence on a classwide basis.

The Court similarly rejects two arguments from Barrette.  First, Barrette argues that the alleged defect must manifest itself before class certification is warranted.  Because the alleged defect remains latent for the majority of class members, according to Barrette, most class members have suffered no injury.  If, as Barrette claims, Kansas law requires a defect to manifest before a plaintiff can bring a claim for breach of the implied warranty of merchantability, the Court would be required to determine whether each putative class member's bracket has manifested a defect, which would have a substantial bearing on the predominance analysis. Thus, the Court must analyze Kansas law on this point in deciding plaintiff's motion.

The parties agree that whether the defect must manifest has not been addressed specifically in Kansas.  Barrette cites several cases in support of its arguments, none of which are analogous to this case.  *E.g.*, *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999); *Rivera v. Wyeth-Laboratories*, 283 F.3d 315 (5th Cir. 2002); *O'Neil v. Simplicity, Inc.*, 553 F. Supp. 2d 1110, 1115-16 (D. Minn. 2008).  In the cases cited by Barrette the defect had never manifested in any allegedly defective product or the plaintiff never alleged he was harmed by the claimed defect.  In contrast, plaintiff here has alleged that the bracket he purchased was defective and that the defect manifested itself when the railing broke after Jonathan Nieberding fell into it. Furthermore, K.S.A. § 84-2-725 provides that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."  Thus, the Court concludes manifestation of the breach is not required to justify certification of a class action.

Barrette also argues that the Court should deny class certification because every railing product contained an express warranty that preempts any implied warranty. This merits issue is irrelevant to the Rule 23 requirements and need not be determined at the class certification stage. The express warranty was made to every purchaser, so the issue of whether that express warranty displaces the implied warranty is identical for every class member. The preemption argument therefore presents no individualized issues.

Both defendants also argue that individual issues would predominate because plaintiffs alleging breach of the implied warranty must show that they gave notice to the seller of the defective product. K.S.A. § 84-2-607 provides that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy." Defendants argue that § 84-2-607 requires notice before filing a lawsuit for breach and that plaintiff cannot prove with common evidence that "(i) each of the purported class members gave Home Depot pre-suit notice of a purported defect; and (ii) each class member's notice was reasonable under the 'totality of the circumstances.'" (Doc. 135 at 18-19) Defendants assert, correctly, that plaintiff bears the burden of pleading and proving reasonable notice. *Lohmann & Rauscher v. YKK (U.S.A.) Inc.*, No. 05-2369, 2007 WL 1054281, at *1 (D. Kan. Apr. 9, 2007).

This argument also affects the Rule 23 requirements—if, as defendants argue, the Court must decide on an individual basis whether each class member gave reasonable notice, then individual issues could predominate. Thus, at the class certification stage the Court must evaluate whether plaintiff and the class members have satisfied the notice requirement.

Plaintiff argues that Kansas courts have created a blanket exception to the notice requirement, holding it does not apply to warranty claims where the buyer is a consumer. The

Court disagrees—it has found no case, and plaintiff cites none, where a court applying Kansas law has held that a consumer-buyer need not give any notice at all.

But though there is no blanket exception for consumer transactions, Kansas courts relax the notice requirement when the case involves a consumer. *Smith v. Stewart*, 667 P.2d 358, 366 (Kan. 1983). They assess the *reasonableness* of the required notice under the "totality of the circumstances," focusing on the purposes of the notice requirement. *Id.* Kansas courts emphasize that the purpose of the notice requirement is "to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." *Id.* (quoting Official Comment 4 to K.S.A. § 84-2-607). Furthermore, "a relaxed notice requirement is particularly appropriate when the consumer-buyer's delay neither prevented remediation of the breach nor prejudiced the seller in defending against the suit." *Golden v. Den-Mat Corp.*, 276 P.3d 773, 788 (Kan. Ct. App. 2012).

Plaintiff gave notice about the alleged defect on behalf of all potential class members when he filed his initial complaint on June 5, 2012. *See Graham by Graham v. Wyeth Labs., a Div. of Am. Home Prods. Corp.*, 666 F. Supp. 1483, 1500 (D. Kan. 1987) ("[T]he court notes that by filing this lawsuit the defendant was given sufficient notice, under K.S.A. [§] 84-2-607, of the alleged breach of warranty."). Defendants have not contended they took action since then to correct the defect; rather, they continue to deny that the defect exists. There is no evidence that any notice failure has prejudiced defendants' ability to defend against this lawsuit, nor is there evidence of bad faith.

Furthermore, strictly enforcing the notice requirement—and requiring the Court to evaluate notice on an individual basis—essentially would deprive the putative class of its remedy. The nature of the railing products at issue means that a class action is the only practical way for plaintiff and the putative class to pursue their claims. The guardrails and brackets are

relatively cheap products, and legal fees and expenses almost certainly would overwhelm any potential individual recovery by individual plaintiffs.  Thus, requiring each individual class member to prove sufficient notice would cut against the core purpose of the notice requirement.

Taking into account the "totality of the circumstances"—lack of bad faith and prejudice to defendants and the effect of requiring an individual inquiry—the Court concludes that the Kansas Supreme Court would find that the notice given by plaintiff's Complaint satisfies K.S.A. § 84-2-607.

Two earlier opinions from this district support the Court's conclusion.  In *City of Wichita, Kan. v. U.S. Gypsum Co.*, Judge Crow ruled that the plaintiff's failure to give pre-suit notice did not bar its implied warranty claim because such a holding would serve none of the purposes of the notice requirement.  828 F. Supp. 851, 857-58 (D. Kan. 1993) *rev'd in part on other grounds by City of Wichita, Kan. v. U.S. Gypsum Co.*, 72 F.3d 1491 (10th Cir. 1996).  In *Ho v. Michelin North America, Inc.*, Judge Marten cited Judge Crow's *Wichita* order, writing "this court has previously held that § 84-2-607 does not require notice when the buyer is a consumer rather than a merchant."  No. 08-1282, 2011 WL 3241466, at *16 (D. Kan. July 29, 2011).  The Court agrees with these opinions and concludes that the Kansas Supreme Court would find as a matter of law that plaintiff and the class members met the notice requirement by filing this lawsuit on June 5, 2012.

### b.   Willful omission under the KCPA

Section 50-626(b)(3) of the KCPA sets forth the requirements for recovering on a willful omission claim.  A separate provision of the KCPA, K.S.A. § 50-634, authorizes private remedies for KCPA violations.

To make a willful omission claim under § 50-626(b)(3), plaintiff must show that (1) plaintiff and the class members were consumers under the KCPA, (2) defendants were suppliers under the KCPA, (3) defendants willfully omitted a fact about a purchase or sale, and (4) the fact stated or concealed was material.  *Cole v. Hewlett Packard Co.*, No. 90,164, 2004 WL 376471, at *7 (Kan. Ct. App. Feb. 27, 2004).  Plaintiff also must show that defendants had a duty to disclose the material fact.  *Williamson v. Amrani*, 152 P.3d 60, 73 (Kan. 2007), *superseded by statute on other grounds as noted in Kelly v. VinZant*, 197 P.3d 803, 811 (Kan. 2008).  Under the KCPA, a supplier has a duty to disclose a material fact if the supplier knows that the consumer is entering into a transaction under a mistake about the material fact, and the consumer would reasonably expect disclosure of such material fact based on the relationship between the consumer and the supplier, the customs and trade, or other objective circumstances. *Id.*

Defendants challenge only one of the elements necessary to make a submissible claim for willful omission.  Namely, Home Depot argues that plaintiff cannot prove with common evidence that Home Depot omitted a material fact because each purchaser's interaction with Home Depot was unique.  As a result, according to Home Depot, each class member must prove the specific contents of their interactions with Home Depot and its employees to recover.

Home Depot misunderstands plaintiff's claim.  Plaintiff asserts that defendants owed a duty to the putative class members to disclose that the brackets were defective.  Defendants essentially have conceded that they did not disclose that the brackets were defective—indeed, defendants continue to deny that a defect exists.  Thus, the Court need not delve into individual interactions between Home Depot and the class members.  Common proof can establish the remaining elements of a willful omission claim—whether plaintiff and the class members are

consumers, whether defendants are suppliers, and whether defendants knew the brackets were defective and had a duty to disclose the defect.

However, under the KCPA proving a basic claim of willful omission does not necessarily entitle the plaintiff to recovery. Rather, the plaintiff must look to the private remedies authorized for KCPA violations by K.S.A. § 50-634.

The KCPA explicitly endorses the use of class actions to recover for violations of § 50-626. K.S.A. § 50-634(d) provides that "a consumer who suffers loss as a result of a violation of [the KCPA] may bring a class action for damages caused by an act or practice: (1) Violating any of the acts or practices specifically proscribed in K.S.A. 50-626 . . . ." However, defendants argue that because this provision authorizes recovery only for those "who suffer[] loss as a result of a violation," each class member must prove individually that the omission *caused* him harm. Defendants claim this type of proof will require individualized inquiries such that individual issues will predominate. In response, plaintiff argues that he need not prove causation for each class member.

To resolve this issue, the Court must analyze K.S.A. § 50-634(d). The court will apply the standard for statutory interpretation set forth by the Kansas Supreme Court in *Finstad v. Washburn University of Topeka*:

> The interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. The fundamental rule of statutory construction is that the intent of the legislature governs. When construing a statute, a court should give words in common usage their natural and ordinary meaning. In determining legislative intent, we are not limited to consideration of the language used in the statute, but may look to the purpose to be accomplished and the effect the statute may have under the various constructions suggested.

845 P.2d 685, 690 (Kan. 1993).

*Finstad* provides the Court with some guidance about how the Kansas Supreme Court would resolve the issue here.  The plaintiffs in *Finstad* were Washburn University students who brought suit to recover for an allegedly false statement published in Washburn's course catalog. *Id.* at 687.  The plaintiffs sought recovery under a different section of § 50-634 which provides that "[a] consumer who is aggrieved by a violation of [the KCPA] may recover, but not in a class action, damages . . . ." *Id.* at 689.  The students claimed that Washburn was liable under § 50-626 for misrepresenting its course offerings and that the KCPA did not require them to establish a causal connection between Washburn's conduct and their loss.  *Id.*  The Kansas Supreme Court rejected this argument and held that K.S.A. § 50-634(b) required the plaintiffs to show a causal connection for private causes of action.  *Id.* at 691-92.  The court explained that Washburn's false statement was a *per se* violation of the KCPA because K.S.A. § 50-626 declares that certain practices are violations of the KCPA "whether or not any consumer has in fact been misled,"  but clarified that "it does not follow that the students can recover, absent a showing that they are 'aggrieved by' such violation." *Id.* at 690.  Because none of the plaintiffs in that case actually had relied on Washburn's false statement, the Kansas Supreme Court granted summary judgment for Washburn.  *Id.* at 691-92.

While *Finstad* dealt with a provision of § 50-634 that specifically excludes class actions, our Court in *Benedict v. Altria Group* considered causation in the context of class actions under § 50-634(d).  241 F.R.D. 668 (D. Kan. 2007).  In *Benedict*, the plaintiffs brought a class action against Altria, accusing the cigarette maker of misrepresenting the amount of tar and nicotine in light cigarettes.  *Id.* at 671.  Citing *Finstad*, our Court held that § 50-634(d) requires the same causal connection between the misrepresentation and the loss alleged.  *Id.* at 678.  According to the court, "[i]f the acts or practices that constitute a violation of the KCPA are defendants'

statements regarding light cigarettes, it is not at all clear to the court how [the plaintiff] and the other class members can recover damages caused by the statements without showing individual reliance on them." *Id.* at 679. Because the reliance inquiry would require individual inquiries, the court denied class certification under Rule 23(b)(3). *Id.* at 680-81.

The plaintiff in *Finstad* made one argument that is of particular interest to the Court here. Namely, the plaintiff argued that requiring individual reliance inquiries "would effectively gut the class action provision of the KCPA." *Id.* at 679. The court responded by saying "[w]hile the court is sensitive to [the plaintiff's] concerns, it finds the language of K.S.A. § 50-634(d) requires individual showings of reliance, even if the result is very few class certifications *in misrepresentation cases*." *Id.* at 679-80 (emphasis added).

The Court believes that the holding in *Benedict* is limited to misrepresentation cases and that suits alleging omission of a material fact present questions suited to class actions. The Court starts with the "fundamental rule of statutory construction" which is that the "intent of the legislature governs." *Finstad*, 845 P.2d at 690. The Kansas legislature clearly intended to allow litigants to pursue class actions for violations of K.S.A. § 50-626. Section 50-634(d) provides that "a consumer who suffers a loss as a result of the violation of this act *may bring a class action* for damages caused by an act or practice: (1) Violating any of the acts or practices specifically proscribed in K.S.A. 50-626 . . . ." (emphasis added). However, the Court also agrees with Judge O'Hara's opinion in *Benedict* where he concluded that the part of the statute that says "a consumer who suffers a loss as a result" of a KCPA violation requires claimants to make some showing on causation. 249 F.R.D. at 679.

The issue then becomes what *type* of proof is required to prove causation in a class action under the KCPA's material omission provision. In *Benedict*, Judge O'Hara concluded that when

24

a putative class alleges a misrepresentation, each class member must prove individually that he

relied on the misrepresentation and were therefore harmed by it. *Id.* Judge O'Hara conceded

that this ruling would lead to "*very* few class certifications in misrepresentation cases." *Id.* at

679-80. The Court now will go one step further; if individualized showings of causation are

required in *every* type of case under K.S.A. § 50-626, then pursuing a class action would be well-

nigh impossible. Causation would defeat the Rule 23(b)(3) predominance requirement—as well

as its identical Kansas law counterpart—in virtually every putative K.S.A. § 50-626 class.

As a result, while the Court agrees that the plaintiff must make some kind of causation

showing, the Court believes that proving causation on an individual basis is not required in every

case under § 50-626. Specifically, the Court believes that an individualized showing is not

required in an omission case, such as the one alleged here. To prevail on an omission claim, a

plaintiff must show that the defendant had a duty to disclose a "material" fact. *Williamson*, 152

P.3d at 73. A material fact under the KCPA is "one to which a reasonable person would attach

importance in determining his or her choice of action in the transaction involved." *York v.*

*InTrust Bank, N.A.*, 962 P.2d 405, 420 (Kan. 1998). In contrast, a misrepresentation claim under

the KCPA lacks the requirement that the misrepresentation be "material." *See* K.S.A. § 50-

626(b)(1).

The fact that a material omission is one to which a "reasonable person" would attach

importance suggests that, in contrast to a misrepresentation claim, it is an objective, not a

subjective standard. Because the focus is on the objective, reasonable person, the Court

concludes that objective proof on the causation element is sufficient. A factfinder will not have

to determine whether each plaintiff subjectively relied on the omissions, but will have to

determine only whether those omissions were likely to deceive and influence a reasonable

person.  *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1092-93 (9th Cir. 2010)

(holding that individualized showings of causation in class action alleging material omission is

not required under Hawaiian consumer protection law).

Thus, in this case, plaintiff need not prove on an individual basis that defendants'

allegedly material omissions caused harm to each putative class member.  Based on a review of

§ 50-626 of the KCPA and to give effect to the class action provision under § 50-634, the Court

concludes that the putative class may prove causation by showing that the objective, reasonable

person would have been harmed by the omission.  As a result, individual issues do not

predominate the causation inquiry—whether the allegedly omitted fact was material is a question

that can be proved or disproved by evidence common to the class.

### c.   Unconscionability under the KCPA

Section 50-627(a) provides that "[n]o supplier shall engage in any unconscionable act or

practice in connection with a consumer transaction."  To prove unconscionability, plaintiff must

show that (1) plaintiff and the class members were consumers under the KCPA, (2) defendants

were suppliers under the KCPA, and (3) defendants committed unconscionable acts or practices.

As discussed, private remedies for KCPA violations are provided in K.S.A. § 50-634.

The KCPA does not define specifically what constitutes an unconscionable act or

practice.  Rather, § 50-627 provides a list of examples that the Court could consider.  Of those

examples, plaintiff argues that because defendants sold products with defective brackets, plaintiff

"was unable to receive a material benefit from the subject of the transaction" and "the price

grossly exceeded the price at which similar property or services were readily obtainable in

similar transactions by similar customers."  K.S.A. § 50-627(b)(2), (3).

Defendants argue that the issue of whether each plaintiff was able to receive a "material benefit" from purchasing the railing product is not suitable for class certification because it requires individualized inquiries into each class member's subjective belief.  The Court agrees. For instance, while the bracket may have been defective, plaintiff may have still received a material benefit from the railing itself if, say, he or she liked its appearance.  As a result, the Court concludes that a showing of unconscionability through the material benefit factor is not suitable for Rule 23(b)(3) certification.

However, plaintiff also argues that the alleged defect means that the price for the bracket grossly exceeded what was readily obtainable in similar transactions.  This factor for unconscionability can be shown objectively, with common proof.  Defendants do not argue otherwise.  Furthermore, causation under § 50-634(d) presents no problems—should plaintiff prove that defendants acted unconscionably in selling the class a product that "grossly" exceeded its worth, that will necessarily have caused harm to the class.  Thus, the Court concludes that common issues predominate plaintiff's unconscionability claim under the KCPA.

### d.  Statute of Limitations

Defendants argue that two issues about the statute of limitations bar certification under Rule 23(b)(3).  First, defendants argue that determining the applicable statute of limitations for plaintiff's implied warranty of merchantability claim requires individualized inquiries.  Under Kansas law, the statute of limitations that applies to breach of implied warranty claims depends on the nature of the breach.  A two-year statute applies to property loss allegations, while a four-year statute applies to allegations of economic loss.  *Winchester v. Lester's of Minn.*, 983 F.2d 992, 994-95 (10th Cir. 1993) (applying Kansas law).  Home Depot argues that because plaintiff alleges that the defect caused personal injury and economic loss, a two-year statute applies.

27

Furthermore, according to Home Depot, the applicable statute of limitations may differ depending on whether each class member suffered personal injury or merely economic damages.

"Where the facts alleged would support a claim under either tort or contract law, the plaintiff is entitled to pursue the theory of [his] choice." *Lim Enters. v. Sears, Roebuck & Co.*, 912 F. Supp. 478, 479 (D. Kan. 1996). Plaintiff seeks certification of a class under a theory of economic loss only. As a result, the four-year statute of limitations applies to all putative class members on the breach of the implied warranty claim.

Second, defendants argue that individual issues predominate because implied warranty claims and KCPA claims have different statutes of limitations. As established above, the implied warranty claims asserted here have a four-year statute of limitations. The KCPA claims, however, have a three-year statute of limitations. *Alexander v. Certified Master Builders Corp.*, 1 P.3d 899, 908 (Kan. 2000). This lawsuit was filed on June 5, 2012, and the class purports to include all purchasers of the subject railing product on or after June 5, 2008. Thus, the three-year statute of limitations may bar putative class members who purchased the subject railing products between June 5, 2008 and June 4, 2009 from pursuing their KCPA claims. According to defendants, determining whether each class members' KCPA claims are barred requires an individualized inquiry which overwhelms common issues.

The Court agrees that determining whether each class member can recover under the KCPA requires some individualized inquiries. However, the individual questions are not difficult to resolve. "[T]he time limit for bringing a claim under the KCPA begins when the KCPA violation occurs." *Campbell v. Hubbard*, 201 P.3d 702, 706 (Kan. Ct. App. 2008). Plaintiff alleges that each KCPA violation occurred when each railing product was sold— defendants allegedly failed to disclose a material fact and allegedly sold the railing products for a

grossly excessive price.  As a result, to recover on the KCPA claims each class member need only demonstrate that they purchased their railing product on or after June 5, 2009.

The Court believes that this simple inquiry for each class member does not mean that individual issues predominate over common issues such that plaintiff cannot satisfy Rule 23(b)(3).  Predominance is not "determined simply by counting noses:  that is, determining whether there are more common issues or more individual issues, regardless of relative importance."  *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013).  Rather, predominance requires a "qualitative assessment," too—whether "proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id.*  The Court believes that the individual questions posed by the statute of limitations issue are not so serious or difficult to resolve that they overwhelm the substantial common issues presented by plaintiff's class claims. As a result, the different statutes of limitations between implied warranty and KCPA claims do not bar Rule 23(b)(3) certification.

### e.   Damages

Citing the Supreme Court's recent decision in *Comcast v. Behrend*, Home Depot argues that individualized damage calculations predominate over common issues such that the Court cannot certify the putative class under Rule 23(b)(3).  133 S. Ct. 1426, 1433 (2013).  *Comcast* explicitly extended to Rule 23(b)(3) the Rule 23(a) requirement that courts must conduct a "rigorous" analysis to determine that Rule 23 has been satisfied at the class certification stage. *Id.* at 1432.  Thus, the Court must take a "close look at whether common questions predominate over individual ones" when computing damages.  *Id.* (internal quotations omitted).  The Tenth Circuit has instructed that a "district court should consider the extent to which material differences in damages determinations will require individualized inquiries."  *Wallace B.*

*Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013).

"Although 'individualized monetary claims belong in Rule 23(b)(3) . . . , predominance may be

destroyed if individualized issues will overwhelm those questions common to the class." *Id.*

Plaintiff seeks to recover the difference between the purchase price of the railing products

as warranted and their actual value considering the allegedly defective brackets.  The measure of

damages for breach of warranty is the difference at the time and place of acceptance between the

value of the goods accepted and the value they would have had if they had been as warranted.

K.S.A. § 84-2-317.  The damages for defendants' KCPA violations, if any, will depend at least in

part on the price each class member paid for the allegedly defective railing product.  Thus,

damages will likely not be identical for every class member, and the damages inquiry presents

some individual issues that must be resolved.

However, the individual issues here do not preclude Rule 23(b)(3) certification.  As

Judge Posner wrote in *Butler*:

> It would drive a stake through the heart of the class action device, in cases in
> which damages were sought rather than an injunction or a declaratory judgment,
> to require that every member of the class have identical damages.  If the issues of
> liability are genuinely common issues, and the damages of individual class
> members can be readily determined in individual hearings, in settlement
> negotiations, or by creation of subclasses, the fact that damages are not identical
> across all class members should not preclude class certification.  Otherwise
> defendants would be able to escape liability for tortious harms of enormous
> aggregate magnitude but so widely distributed as not to be remediable in
> individual suits.

*Butler*, 727 F.3d at 801.

Here, there is essentially one central, common issue of liability:  whether the plastic

brackets designed by Barrette and sold by Home Depot were defective.  Home Depot argues that

how much the railing product was worth to each putative class member depends on the value

each class member derived from it.  However, as discussed above, the value of the defective

bracket is an objective question.  Damages for breach of the implied warranty claim are based on "normal commercial expectations" of the buyer.  *Hodges*, 199 P.3d at 1258.  The damages of individual class members can be determined, with relative ease, in individual hearings or in settlement negotiations.

Nevertheless, the Court recognizes that calculating damages for each class member may present complicated issues at trial.  "Even if individualized (rather than common issues) were to predominate the damage inquiry, the more appropriate course of action would be to bifurcate a damages phase . . . ."  *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 675 (D. Kan. 2013) (quoting *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 452 (D. Kan. 2006)).  In *In re Motor Fuel Temperature Sales Practices Litigation*, Judge Vratil bifurcated the plaintiffs' request for damages.  *Id.*  Judge Vratil wrote, "[t]his approach is consistent with Rule 23(c)(4), which permits, '[w]hen appropriate, an action [to] be brought or maintained as a class action with respect to particular issues.'"  *Id.* (citing Fed. R. Civ. P. 23(c)(4)); *Butler*, 727 F.3d at 800 ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members . . . is permitted by Rule 23(c)(4) and will often be the sensible way to proceed.").

Therefore, the Court finds that the issue of liability is appropriate for Rule 23(b)(3) certification, but bifurcates plaintiff's motion to reserve the damages issue for determination at a later date, if plaintiff prevails on the liability question.

### 2.  Superiority

In addition to predominance under Rule 23(b)(3), a plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiff argues that a class action is superior here

because the claims of individual class members are too small to make it economically feasible to prosecute individual lawsuits. Plaintiff and the class seek to recover the difference between the defective railing products as warranted and their actual value. Furthermore, plaintiff argues that a class action is a more efficient method to resolve this lawsuit, as opposed to potentially hundreds of individual trials. The Court agrees with plaintiff's argument. The potential recoverable damages for each class member are small enough that the realistic alternative to a class action is not thousands of individual suits, but zero individual suits, because virtually no plaintiff would incur the costs of a lawsuit when the potential recovery is so low. *See Butler*, 727 F.3d at 798.

In rebuttal, defendants point to the fact that KCPA claims provide for the recovery of civil penalties and attorney's fees, which make individual claims under that statute economically viable. *See* K.S.A. §§ 50-634, 50-636. While the availability of civil penalties and attorney's fees may destroy superiority in some cases, those arguments are less impactful here because plaintiff also brings claims for breach of the implied warranty of merchantability. Defendants very well could prevail on plaintiff's KCPA claims, but lose on the implied warranty claims. In that situation, recovery of attorney's fees and civil penalties would be unavailable to the class members. In light of the efficiency provided by resolving plaintiff's class claims in one action, the Court concludes that the presence of statutory penalties and attorney's fees for some, but not all, claims does not render individual suits superior here.

Defendants also argue that Barrette has a refund policy whereby it will replace any railing product that malfunctions. According to defendants, the putative class members should be required to recover under the refund policy, rather than pursue a lawsuit. The Court rejects this argument as well. Plaintiff alleges a latent defect which causes the subject brackets to be

dangerous in some situations.  The alleged defect is something about which few putative class members are aware.  The Court finds it unrealistic to require the class members to pursue the warranty option when they may not even know that the product is defective.

Because the potential recovery for each class member is small and resolution of potentially thousands of claims in one action is efficient, the Court concludes that a class action is superior to other methods of resolving this dispute.

## IV.  Notice

Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  To that end, the Court orders the parties to confer and submit a proposed order about notice that complies with Rule 23(c)(2)(B) by October 9, 2014.

## V.  Conclusion

The Court finds that plaintiff has satisfied the requirements for certification of a Rule 23(b)(3) class action on the question of liability on plaintiff's three class claims.  However, the Court severs plaintiff's request for damages and will determine that issue at a later date.  As a result, the Court grants in part and denies in part plaintiff's motion for class certification.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Motion for Class Certification (Doc. 130) is granted in part and denied in part.  The parties are ordered to submit a joint proposed order for providing notice to class members that complies with Fed. R. Civ. P. 23(c)(B)(2) on or before October 9, 2014.  In addition, the parties are ordered to notify Judge James that this case is ready for scheduling.

33

**IT IS FURTHER ORDERED BY THE COURT** that defendants' Motions to Strike the

Affidavit of James Stoffer (Docs. 138, 141) are denied as moot.

**IT IS SO ORDERED.**

**Dated this 8th day of September, 2014, at Topeka, Kansas**


**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**