IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JONATHAN NIEBERDING and
FREDERICK ALOYSIUS NIEBERDING,

Plaintiffs,

v.

Case No. 12-CV-2353-DDC-TJJ

BARRETTE OUTDOOR LIVING, INC. and
HOME DEPOT USA, INC.,

Defendants.

**MEMORANDUM AND ORDER**

This matter comes before the Court on class representative Frederick Aloysius Nieberding's unopposed motion for (1) certification of settlement class, (2) preliminary approval of class action settlement, and (3) approval of form and manner of notice (Doc. 181). For the following reasons, the Court grants plaintiff's request to certify a settlement class and to approve the proposed settlement preliminarily. But the Court denies plaintiff's request to approve the form and manner of the proposed notice to class members.

**I. Background**

Defendant Barrette Outdoor Living, Inc. designs prefabricated vinyl guardrail kits for use on residential decks and porches. The kits at issue in this case include small brackets made out of PVC, which connect the horizontal rails at the top and bottom of the vinyl guardrails to the structure on which the railing is installed. The top bracket is shaped like a bread loaf, and the bottom bracket is rectangular. The operative Complaint alleges that the top, bread loaf-shaped bracket (the "Bracket") is defective because it is not sufficiently robust to withstand its reasonably anticipated use.

1

Defendant Home Depot sells the Brackets both by themselves and also as part of a guardrail kit. Plaintiff Frederick Nieberding purchased a guardrail kit from Home Depot in 2011. He installed it on a second-story deck at his home using the Brackets included with the kit. Plaintiff alleges that on June 9, 2011, his son Jonathan Nieberding fell into the railing and that one or both of the Brackets broke, causing Jonathan to fall two stories and suffer injuries.

Jonathan Nieberding asserts claims for injuries he suffered in the fall, but he has informed the Court that the parties have settled his claims. *See* Doc. 182 at 6 n.3. Frederick Nieberding, who purchased the guardrail kit that allegedly caused his son's injuries, brings class action claims on behalf of himself and others. This Memorandum and Order concerns only the class claims, so the Court will refer to Frederick Nieberding as "plaintiff." Plaintiff asserts class claims for breach of warranty, violations of the Kansas Consumer Protection Act, and unjust enrichment.

On July 3, 2013, plaintiff filed a motion for class certification (Doc. 130). The Court granted in part and denied in part plaintiff's motion on September 8, 2014 (Doc. 157). Specifically, the Court declined to certify a damages class but approved the following liability-only class under Fed. R. Civ. P. 23(b)(3):

> All individual persons, corporations, partnerships, associations and other entities who, during the period from June 5, 2008, to the present, purchased in the State of Kansas directly from Home Depot, U.S.A., Inc., one or more guardrail products supplied by Barrette Outdoor Living, Inc., that included the plastic brackets (defined below). The plastic brackets are the breadloaf style 1291 (white) and 1292 (wicker) upper guardrail brackets pictured below.
>
> Excluded from the Class are those persons who have lawsuits pending against, or who have settled their claims against, any one or more of the defendants for the same or similar claims as set forth herein, members of the Kansas state judiciary, Defendants, Defendants' employees, any entities in which either Defendants have a controlling interest, and the parents, subsidiaries, affiliates, and their officers and directors of Defendants and the members of their immediate families. Also excluded from the class are those individual persons, corporations, partnerships,

associations and other entities who, after purchasing one or more products that included the plastic brackets, subsequently sold or otherwise relinquished possession of the product(s).

Doc. 157 at 6.

On September 23, 2014, both defendants filed Rule 23(f) petitions for permission to appeal the Court's certification order (Docs. 159, 160). The Tenth Circuit granted both petitions on October 10, 2014 (Doc. 167). On November 10, 2014, Judge James entered a stay of this case pending the appeals (Doc. 180). After the stay took effect, nothing more happened at the district court level until March 25, 2015, when plaintiff filed this motion. On April 1, 2015, the Tenth Circuit issued an order abating defendants' appeals and directing "a limited remand to the United States District Court for the District of Kansas to allow that court to conduct any and all appropriate proceedings necessary to consider the parties' proposed settlement." Doc. 183 at 2. Neither defendant has filed their initial brief on appeal.

Plaintiff's unopposed motion requests three forms of relief: (1) certification of the settlement class; (2) preliminary approval of the class action settlement; and (3) approval of the form and manner of notice. The Court addresses each request in turn.

## II. Certification of the Settlement Class

### A. The Proposed Settlement Class

Although the Court has certified a class in this case already, the parties now seek certification of a slightly different class for purposes of settlement:

> All individual persons, corporations, partnerships, associations and other entities who, during the period from June 5, 2008 to April 14, 2015, purchased in the State of Kansas directly from Home Depot U.S.A., Inc., one or more guardrail products supplied by Barrette Outdoor Living, Inc., that included the breadloaf style 1291 (white) and/or 1292 (wicker) upper guardrail brackets, including, but not limited to, the following guardrail products:
>
> 1. 355602 67.75" TRADITIONAL VINYL RAIL WHITE

2. 515890 4PC VINYL HANDRAIL BRACKET KIT

3. 541400 WILLIAMSBURG PREBUILT HANDRAIL

> Excluded from the Settlement Class are those persons who have lawsuits pending against, or who have settled their claims against, any one or more of the Settling Defendants for the same or similar claims as set forth herein, members of the Kansas state judiciary, Settling Defendants, Settling Defendants' employees, any entities in which either Settling Defendants have a controlling interest, and the parents, subsidiaries, affiliates, and their officers and directors of Settling Defendants and the members of their immediate families.

Doc. 182 at 20.

The proposed Settlement Class differs only marginally from the class the Court certified earlier. First, it extends the class period to include purchasers who bought Brackets up to the date of this order. Second, it identifies specifically the three products containing the Brackets. Third, it now includes those purchasers who subsequently sold or otherwise relinquished possession of the guardrails or Brackets.

**B. Legal Standard**

"Class action settlements are premised upon the validity of the underlying class certification." *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004). Class certification is appropriate if the district court finds, after conducting a "rigorous analysis," that the proposed class satisfies the requirements of Fed. R. Civ. P. 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see [Fed. R. Civ. P.] 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Id.*

But where, as here, the Court certified a class before the parties agreed on a settlement, *Amchem*'s heightened scrutiny mandate does not apply. *In re Integra*, 354 F.3d at 1262. Still, "a trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment." *Id.* at 1261 (citing Fed. R. Civ. P. 23(c)(1)).

**C. Analysis**

The Court certifies the proposed Settlement Class here for the same reasons outlined in its September 8, 2014 Memorandum and Order partially granting plaintiff's motion for class certification. *See* Doc. 157. The differences between the proposed Settlement Class and the class the Court certified last September, while minor, slightly enhance the case for certification. The proposed Settlement Class definition more clearly identifies the specific products that contain the Brackets, it extends the class period to cover those purchasers who bought products containing the Brackets through the date of this order, and it includes those purchasers who have sold or otherwise relinquished possession of the Brackets. The definition adequately identifies the people who are (1) entitled to relief, (2) subject to being bound by a final judgment, and (3) entitled to the best notice practicable under Rule 23(c)(2). *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2014 WL 5431133, at *13 (D. Kan. Oct. 27, 2014).

One issue merits further discussion, however. As the Court explained, the Tenth Circuit granted both defendants permission to appeal the Court's September 8, 2014 Memorandum and Order. On April 1, 2015, the Tenth Circuit abated the appeals—without deciding them—to allow the Court to consider the settlement proposed by the parties. Although the parties do not make this argument, the Court believes it must consider whether the decision to grant Rule 23(f)

review casts doubt on the Court's certification order. After considering this issue, the Court concludes that, on the facts presented here, the Tenth Circuit's order permitting appeal gives no indication whether it would be likely to affirm or reverse class certification.

First, the order did not disclose the reason for its decision to permit the appeals. *See* Doc. 167 at 2 (stating simply, "Upon consideration, we also grant both petitions."). Second, the Tenth Circuit imposes no limits on its authority to grant a Rule 23(f) petition, emphasizing that "our discretion in granting or denying a petition for interlocutory review *is broad, and necessarily so*." *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009) (emphasis added). This broad discretion is evidenced by the fact that our Circuit both affirms and reverses district courts after granting Rule 23(f) review. *Compare CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1085 (10th Cir. 2014) (holding, on a Rule 23(f) appeal, that "the district court did not err in certifying the class"), *with Vallario*, 554 F.3d at 1261 (reversing the district court's order granting class certification). For these reasons, the Court concludes that it should not interpret the Tenth Circuit's decision to permit interlocutory appeal here as a signal that it is inappropriate to certify the settlement class the parties now jointly propose.

In addition, the Court is mindful that a district court "overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment." *In re Integra*, 354 F.3d at 1261. The Court has reviewed the class certification cases decided by the Supreme Court and our Circuit since the September 8, 2014 certification order. None of those decisions leads the Court to conclude that no class should be certified here. Because the small differences between the previously certified class and the proposed Settlement Class only strengthen the case for certification, the Court certifies the proposed Settlement Class.

6

### III. Preliminary Settlement Approval

#### A. Legal Standard

Under Rule 23(e), parties may settle the claims of a certified class action only with court approval. The Court may approve a settlement only upon finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Tenth Circuit has noted four factors that a district court must consider when assessing whether a proposed settlement is "fair, reasonable, and adequate":

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The settlement approval process typically occurs in two phases. First, the Court considers whether preliminary approval of the settlement is appropriate. William B. Rubenstein, Newberg on Class Actions § 13:10 (5th ed.); *Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2012 WL 6085135, at *4 (D. Kan. Dec. 6, 2012). "If the Court grants preliminary approval, it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement." *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012); *see also* Newberg on Class Actions § 13:10 ("[T]he court's primary objective [at the preliminary approval stage] is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing."). Second, "taking account of all of the information learned

during [the preliminary approval] process, the court decides whether or not to give 'final approval' to the settlement." Newberg on Class Actions § 13:10.

Because preliminary approval is just the first step of the approval process, courts apply a "less stringent" standard than that at final approval. *Freebird*, 2012 WL 6085135, at *5. "[D]istrict courts have developed a jurisprudence whereby they undertake *some* review of the settlement at preliminary approval, but perhaps just enough to ensure that sending notice to the class is not a complete waste of time." Newberg on Class Actions § 13:10 (emphasis in original). "The general rule is that a court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." *Id.* (internal citation omitted). "While the Court will consider [the Tenth Circuit's] factors in depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well." *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. at 502-03.

## B. The Proposed Settlement Overview

Defendants will pay $350,000 into a common fund. This fund will be used to pay all costs of notice and administration, any fees and costs awarded to plaintiff's counsel, any incentive award to plaintiff, and all claims by class members. Each class member who makes a claim will receive a percentage of the "Settlement Fund." The Settlement Fund consists of the $350,000 total common fund less (1) any expenses for the claims administrator, (2) any court-approved attorneys' fees and costs, and (3) any incentive award to plaintiff. Each class member who makes a claim will receive a portion of the Settlement Fund based on the following formula:

$$\text{Number of Claimant's Brackets} \times \frac{\text{Settlement Fund}}{\text{Number of all Brackets Claimed}}$$

Rust Consulting, Inc. ("Claims Administrator"), an independent claims administrator, will administer the Settlement Agreement. The Claims Administrator will publish notice,

8

establish a settlement website, and administer the claims process. Within 30 days of an order approving the settlement, defendants will transfer $50,000 to an account established by the Claims Administrator to cover the costs of administration. The Claims Administrator will transfer to the Settlement Fund any funds remaining in this account after it pays all fees and administrative costs.

Plaintiff's counsel will request expenses of $35,426.46. They also will request attorneys' fees of 40% of the total common fund less expenses, or about $125,829.42.[1] Finally, plaintiff requests a $7,000 class representative incentive award. Assuming the Court grants final approval to the settlement as currently proposed, the Settlement Fund will contain approximately $131,744.12 to be divided among class members who file claims.

**C. Analysis**

After analyzing the Tenth Circuit's factors under the relaxed standard that is appropriate at the preliminary approval stage, the Court concludes that all four factors favor approval of the settlement proposed here. *See Rutter & Wilbanks Corp.*, 314 F.3d at 1188 (noting the four factors to consider when evaluating a class action settlement).

*First*, the Court finds that the parties fairly and honestly negotiated the settlement. The parties arrived at the settlement after mediating the case for several days before David Aemmer, Chief Circuit Mediator for the Tenth Circuit. Engaging a mediator is at least some evidence of fair and honest negotiations, so this factor favors preliminary approval.

*Second*, serious questions of law and fact appear to exist in this case, such that the ultimate outcome of the litigation is in doubt. Defendants have filed two partial motions for

---

[1] The record now is insufficient to determine whether the requested attorneys' fees and expenses are appropriate, and the Court will address this issue at the final approval hearing, should one occur. The Court notes that it likely will evaluate the reasonableness of the requested fee award under the "hybrid approach" typically used in common fund settlements in the Tenth Circuit, as described in in *Bruner v. Sprint/United Mgmt. Co.*, No. 07-2164-KHV, 2009 WL 2058762, at *3 (D. Kan. July 14, 2009).

9

summary judgment, and the Court's class certification order is pending on appeal. A ruling for defendants on their motions for summary judgment would circumscribe plaintiff's avenues of recovery significantly. Even worse for plaintiff, if the Tenth Circuit reversed the Court's class certification order, the class members might recover nothing. These issues cast meaningful doubt on the ultimate outcome of this litigation, so the Court concludes that this factor favors preliminary approval.

*Third*, the value of an immediate recovery here outweighs the possibility of future relief after protracted and expensive litigation. Although the proposed settlement establishes a $350,000 common fund, the class members will split approximately $131,744.12 if the Court approves the fee and expense awards plaintiff's counsel seeks. Home Depot does not have specific records but stipulates that it sold approximately 10,000 Brackets in Kansas over the class period. Therefore, if every class member who purchased a Bracket makes a claim, each would be entitled to approximately $13.17 per Bracket they purchased. This amount appears reasonable given that, according to plaintiff, the Bracket sells at retail for about $2.50.

On the other hand, if plaintiff proceeds with this litigation through a trial on the merits, there is a substantial risk that plaintiff may not establish defendants' liability and that the amount of damages ultimately awarded will be less than the amount guaranteed by the settlement. As discussed above, the pending summary judgment motions and the appeal present serious questions about this lawsuit. Meanwhile, the additional costs incurred by plaintiff's counsel in taking this case through the pending appeal, then trial, and then possible post-trial appeals would reduce the value of the recovery. *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006). The Court concludes that this factor favors preliminary approval.

*Last*, plaintiff is represented by experienced attorneys who have certified that they believe the settlement is fair and reasonable. For this reason, the Court concludes that the fourth factor favors preliminary approval. Because all four of the Tenth Circuit's factors weigh in favor of preliminary approval here, the Court grants preliminary approval of the parties' proposed settlement.

### IV. Notice

#### A. Legal Standard

When, as here, the Court certifies a class action under Fed. R. Civ. P. 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must "clearly and concisely state in plain, easily understood language":

(1) the nature of the action;

(2) the definition of the class certified;

(3) the class claims, issues, or defenses;

(4) that a class member may enter an appearance through an attorney if the member so desires;

(5) that the court will exclude from the class any member who requests exclusion;

(6) the time and manner for requesting exclusion; and

(7) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Also, as part of the settlement approval process under Rule 23(e), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e) creates a less stringent notice standard than Rule 23(c)(2)(B), however. Rule 23(c)(2)

11

requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." "Such notice is essential in order to ensure that class members who desire to pursue their own claims individually have the opportunity to exercise their right to opt out of the class." *Gottlieb v. Wiles*, 11 F.3d 1004, 1012 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002). Rule 23(e), by contrast, requires only "reasonable notice to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1).

"In addition to the requirements of Rule 23, the constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005) (citing U.S. Const. amend. V). "For due process purposes, rather than looking at actual notice rates, our precedent focuses upon whether the district court gave 'the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.'" *Id.* at 944 (quoting *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001)). "The legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar." *Id.*

Although the Court partially granted plaintiff's motion for class certification on September 8, 2014, the class members have not yet received any notice of this class action. After the Tenth Circuit granted defendants' petitions for Rule 23(f) review of the Court's certification decision, the Court stayed the case before notice was disseminated. And now, the Court has certified a different, settlement-only class, so Rule 23(c)(2)(B) notice would be required in any case. As a result, the Court must direct "the best notice that is practicable under

the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The "best notice practicable" does not necessarily mean actual notice, *e.g.,* mailed individual notice. *DeJulius*, 429 F.3d at 944. Instead, notice by publication can satisfy Rule 23 and due process when the identities of class members are unknown to the parties. *Id.* (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 320 (1950)). However, "[i]ndividual notice to identifiable class members is not a discretionary consideration that can be waived in a particular case; rather, it is 'an unambiguous requirement of Rule 23.'" *Better v. YRC Worldwide, Inc.*, No. 11-2072-KHV, 2015 WL 566962, at *3 (D. Kan. Feb. 11, 2015) (quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176 (1974)).

### B. Proposed Notice

Under the settlement proposed by the parties here, the Claims Administrator will establish a settlement website, which will contain a long-form notice and the claim form. The long-form notice (Doc. 182-1 at 38-44) contains the information required by Rule 23(c)(2)(B). It describes the nature of the action; the definition of the class certified; the class claims; each class member's right to enter an appearance through an attorney in this case; each class member's right to opt-out of the settlement; the time and manner for requesting to opt-out; and the binding effect a judgment will have on the class members. The long-form notice also states the amounts plaintiff's counsel will request as attorneys' fees and expenses; plaintiff's requested incentive award; the date of the final approval hearing; and how one can acquire more information about this lawsuit, the settlement agreement, and the approval process.

Plaintiff proposes notice by publication. Within 20 days after the Court enters an order approving the settlement and the proposed notice, the Claims Administrator will publish, two

separate times, the publication notice (Doc. 182-1 at 45-46) in: The Garden City Telegram, The Hays Daily News, the Hutchinson News, The Kansas City Star, the Lawrence Journal-World, The Topeka Capital-Journal, and The Wichita Eagle. The Claims Administrator chose these newspapers because they have the highest circulation of any newspaper in the counties in Kansas where Home Depot is located. The notice in these newspapers will describe the Brackets, those entitled to recover, class counsel, and class members' right to participate or opt-out of the settlement. The publication notice also will refer class members to the settlement website.

### C. Analysis

The Court approves the content and form of the long-form notice, the publication notice, and the claim form. But the Court cannot approve the manner of distributing the class notice based on the record before it. Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." "Individual notice to identifiable class members is not a discretionary consideration that can be waived in a particular case; rather, it is 'an unambiguous requirement of Rule 23.'" *Better*, 2015 WL 566962, at *3 (quoting *Eisen*, 417 U.S. at 176).

Plaintiff argues that individual notice is not possible here because "Home Depot does not record the identities of its customers who may have purchased the Brackets . . . ." Doc. 182 at 15. To support this argument, plaintiff cites a Stipulation he attached to his memorandum in support of his motion for class certification. Doc. 131-4. The Stipulation says, "Home Depot's records do not enable Home Depot to identify the precise number or the identities of all persons who purchased" products containing the Brackets. Doc. 131-4 at 1. While the Stipulation indicates that Home Depot cannot identify *all* Bracket purchasers, it does not say that Home Depot can identify none of the purchasers of a product containing the Brackets. Based on the

14

record before it, the Court cannot conclude that Home Depot is unable to identify a single Bracket purchaser during the class period. Because actual notice, when possible, is "'an unambiguous requirement of Rule 23,'" the Court denies approval of the proposed manner of notice. *Better*, 2015 WL 566962, at *3 (quoting *Eisen*, 417 U.S. at 176).

Plaintiff must confer with defendant Home Depot to determine which, if any, class members Home Depot can identify specifically. Until then, the Court cannot approve the proposed notice to class members. And although the Court has reviewed the parties' proposed Final Approval Schedule, the Court cannot set any settlement schedule until the parties satisfy the notice requirements of Rule 23 and the due process clause.

V. **Conclusion**

The Court grants in part and denies in part plaintiff's motion. The Court grants plaintiff's request to certify a settlement class and to approve preliminarily the proposed class action settlement. However, because plaintiff proposes notice by publication without demonstrating that individual notice is impracticable, the Court denies plaintiff's request to approve the proposed class notice.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Certification of Settlement Class, Preliminary Approval of Class Action Settlement, and Approval of Form and Manner of Notice (Doc. 181) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 14th day of April, 2015, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
