IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JONATHAN NIEBERDING and
FREDERICK ALOYSIUS NIEBERDING,

      Plaintiffs,

v.

BARRETTE OUTDOOR LIVING, INC. and
HOME DEPOT USA, INC.,

      Defendants.

Case No. 12-CV-2353-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiff Frederick Nieberding brings class action claims on behalf of himself and others alleging that a bracket used to connect vinyl guardrails on residential decks and porches is defective.  Defendant Barrette Outdoor Living, Inc. manufactured the brackets, and defendant Home Depot USA, Inc. sold them.  Plaintiff[1] asserts class claims for breach of warranty, violations of the Kansas Consumer Protection Act, and unjust enrichment.

On September 8, 2014, the Court certified the following liability-only class under Fed. R. Civ. P. 23(b)(3):

> All individual persons, corporations, partnerships, associations and other entities who, during the period from June 5, 2008, to the present, purchased in the State of Kansas directly from Home Depot, U.S.A., Inc., one or more guardrail products supplied by Barrette Outdoor Living, Inc., that included the plastic brackets (defined below).  The plastic brackets are the breadloaf style 1291 (white) and 1292 (wicker) upper guardrail brackets pictured below.

---

[1]    Plaintiff Jonathan Nieberding also asserts claims for personal injuries he sustained after he fell into the railing of a second-story deck at the home of his father, Frederick Nieberding.  One or more of the brackets installed on that railing allegedly broke causing Jonathan to fall two stories and sustain injuries.  Jonathan Nieberding has informed the Court that the parties have settled his claims.  *See* Doc. 182 at 6 n.3.  Because this Memorandum and Order addresses only the class claims brought by Frederick Nieberding, who purchased the brackets that allegedly caused his son's injuries, the Court will refer to Frederick Nieberding as "plaintiff."

Excluded from the Class are those persons who have lawsuits pending against, or who have settled their claims against, any one or more of the defendants for the same or similar claims as set forth herein, members of the Kansas state judiciary, Defendants, Defendants' employees, any entities in which either Defendants have a controlling interest, and the parents, subsidiaries, affiliates, and their officers and directors of Defendants and the members of their immediate families.  Also excluded from the class are those individual persons, corporations, partnerships, associations and other entities who, after purchasing one or more products that included the plastic brackets, subsequently sold or otherwise relinquished possession of the product(s).

Doc. 157 at 6.

Both defendants filed Rule 23(f) petitions for permission to appeal the Court's certification order (Docs. 159, 160), which the Tenth Circuit granted on October 10, 2014 (Doc. 167).  On March 25, 2015, the parties advised the Court that they had reached a settlement by filing a Motion for Certification of Settlement Class, Preliminary Approval of Class Action Settlement, and Approval of Form and Manner of Notice (Doc. 181).  In that motion, the parties sought certification of a slightly different class for settlement purposes.  On April 14, 2015, the Court certified[2] the following settlement class:

All individual persons, corporations, partnerships, associations and other entities who, during the period from June 5, 2008 to April 14, 2015, purchased in the State of Kansas directly from Home Depot U.S.A., Inc., one or more guardrail products supplied by Barrette Outdoor Living, Inc., that included the breadloaf style 1291 (white) and/or 1292 (wicker) upper guardrail brackets, including, but not limited to, the following guardrail products:

1.  355602 67.75" TRADITIONAL VINYL RAIL WHITE

2.  515890 4PC VINYL HANDRAIL BRACKET KIT

3.  541400 WILLIAMSBURG PREBUILT HANDRAIL

---

[2]     The Court resumed its jurisdiction over the certification issue because, on April 1, 2015, the Tenth Circuit issued an order abating defendants' appeals and directing "a limited remand to the United States District Court for the District of Kansas to allow that court to conduct any and all appropriate proceedings necessary to consider the parties' proposed settlement."  Doc. 183 at 2.

> Excluded from the Settlement Class are those persons who have lawsuits pending against, or who have settled their claims against, any one or more of the Settling Defendants for the same or similar claims as set forth herein, members of the Kansas state judiciary, Settling Defendants, Settling Defendants' employees, any entities in which either Settling Defendants have a controlling interest, and the parents, subsidiaries, affiliates, and their officers and directors of Settling Defendants and the members of their immediate families.

Doc. 184 at 3–4, 5.

On June 1, 2015, under a Court-approved notice plan (Doc. 187), the class action administrator mailed the long form notice and claim form to 223 individuals identified by defense counsel as potential class members. Doc. 190-1 at ¶ 6. As of August 5, 2015, the class action administrator had mailed the long form notice and claim form to an additional five individuals who had requested them by calling a toll free number. *Id.* As of August 7, 2015, the class action administrator had received 17 notice and claim forms returned as undeliverable without valid forwarding addresses. *Id.* at ¶ 7. The class action administrator also published notice, as directed by the Court-approved notice plan (Docs. 184, 187), in the following newspapers: the *Garden City Telegram*, the *Hays Daily News*, the *Hutchinson News*, the *Kansas City Star*, the *Lawrence Journal-World*, the *Topeka Capital-Journal*, and the *Wichita Eagle*. Doc. 190-1 at ¶ 8 & Ex. A.

The deadline for opting out of the class was July 31, 2015. The class action administrator had not received any opt-outs by the deadline, and no class members filed objections to the settlement. Doc. 190-1 at ¶ 12. As of August 7, 2015, the class action administrator had received 38 claim forms claiming a total of 262 products or 1,048 brackets. Doc. 193-1 at ¶ 2.

This matter comes before the Court on the Representative Plaintiff's Motion for Final Approval of Class-Action Settlement and Application for Award of Attorneys' Fees and Expenses (Doc. 189). No opposition or objections have been filed. On August 28, 2015, the

Court held a fairness hearing on plaintiff's motion.  For the following reasons, the Court grants plaintiff's motion in part.

## I.        Subject Matter Jurisdiction

Before turning to the merits of plaintiff's motion, the Court addresses the issue of subject matter jurisdiction.  "'Subject matter jurisdiction . . . involves a court's power to hear a case [and this requirement] can never be forfeited or waived.'"  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)).  The Supreme Court has explained that federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  *Id.* (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  Objections to subject matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage of the litigation."  *Id.* at 506; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Plaintiff filed the original Complaint in this case on June 5, 2012, asserting jurisdiction under the Class Action Fairness Act ("CAFA") because this is a class action involving a diversity of citizenship between plaintiffs and defendants and the amount in controversy exceeds $5,000,00.00.  Doc. 1 at ¶ 9; *see also* 28 U.S.C. § 1332(d)(2); *Standard Fire Ins. Co. v. Knowles*, __ U.S. __, 133 S. Ct. 1345, 1348 (2013) ("CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'") (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)).  While plaintiff's allegations satisfy CAFA's requirements of minimal diversity and the amount in controversy, the Court independently

considers whether plaintiff has established sufficiently that the amount in controversy, in fact, exceeds $5,000,000, as CAFA requires.

The Court begins by recognizing several basic principles about subject matter jurisdiction. First, the amount in controversy is not "'the amount the plaintiff will recover,' but rather 'an estimate of the amount that will be put at issue in the course of the litigation.'" *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008); then citing *Gibson v. Jeffers*, 478 F.2d 216, 220 (10th Cir. 1973) ("The test to determine amount in controversy is not the sum ultimately found to be due, but the sum demanded in good faith.")). Second, the Court must accept plaintiff's allegation that the amount in controversy is satisfied if plaintiff alleges in good faith that it is. *Dart Cherokee Basin Operating Co., LLC v. Owens*, __ U.S. __, 135 S. Ct. 547, 552 (2014) (citing *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 276 (1977) ("'[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.'") (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)) (internal quotation marks omitted)). Third, the Court looks to the amount in controversy alleged in the original Complaint and does not consider any reductions in the amount in controversy that may occur after the lawsuit is commenced. *See St. Paul Mercury Indemnity Co.*, 303 U.S. at 289–290 ("The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction[, and] [e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). Fourth, the Court assesses all of the damages alleged, as well as the value of any injunctive relief and statutorily permitted attorneys' fees. *See Frederick*, 683 F.3d at 1247 ("[A]ll damages [are] counted toward the total amount in controversy, including punitive damages."); *see also Lovell v.*

*State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) ("In cases seeking declaratory and injunctive relief, the amount in controversy is measured by the value of the object of the litigation.") (internal quotation marks and citation omitted); *Woodmen of World Life Ins. Society v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) (a court should consider an award of attorneys' fees in determining amount in controversy).   And last, in the class action setting, the Court considers whether the amount in controversy exceeds the jurisdictional threshold by aggregating the claims of the individual class members.  *Knowles*, 133 S. Ct. at 1348 ("To 'determine whether the matter in controversy' exceeds that sum, 'the claims of the individual class members shall be aggregated.'") (quoting § 1332(d)(6)).

        After inquiry and close scrutiny at the final approval hearing, the Court concludes that plaintiff's allegations in the original Complaint—*i.e.*, that the amount in controversy exceeds $5,000,000—satisfied these jurisdictional standards.  The Court comes to this conclusion after some initial skepticism.  After all, the gross amount of the settlement is only $350,000, seven percent of CAFA's jurisdictional threshold.  But as Class Counsel explained, the case that the parties ended up settling differed substantially from the case that plaintiff filed.

        Class Counsel explained that the Complaint theorized that plaintiff's representative claim, by itself, was worth about $4,000.  Counsel based this calculation on the projected cost for plaintiff to replace the entire guardrail system he had installed on his deck using the allegedly defective brackets.  Also, Class Counsel explained that plaintiff's deck is a small one.  So while plaintiff's claim typified the kinds of losses alleged caused by defendants' brackets, Class Counsel estimated that plaintiff's $4,000 in damages actually amount to less than many class members had sustained.

Class Counsel also explained that the putative class pleaded by the Complaint anticipated a large number of class members.  The Complaint sought to certify a class of all purchasers of defective vinyl railing products sold in Kansas, as manufactured by defendant Barrette Outdoor Living, Inc. and sold by defendant Home Depot U.S.A., Inc.  Doc. 1 at ¶ 13.  Class Counsel readily conceded that sales records likely never would identify the precise number of putative class members.  But defendants' counsel estimated that it contained thousands and even tens of thousands of purchasers.  Using the $4,000 metric calculated by Class Counsel, defendants' estimate exceeded the requisite multiplier—1,250—needed to reach CAFA's $5,000,000 jurisdictional requirement.

Class Counsel's calculation does not consider (or count) the other amounts put in controversy by the original Complaint.  For instance, the original Complaint sought an order requiring defendants to disgorge all profits they had derived from selling the allegedly defective products and an injunction forbidding their sale.  Doc. 1 at ¶¶ 33, 37.  Where a plaintiff seeks injunctive relief like this, the governing cases assign a jurisdictional value to that form of relief.  *See*, *e.g.*, *Justice v. Atchison, Topeka & Santa Fe Ry. Co.,* 927 F.2d 503, 505 (10th Cir. 1991) (amount placed in controversy by injunction demand is either the value of the order to plaintiff or the defendant's cost of complying with it).  While defendants never attempted to quantify the cost of complying with such an injunctive order, they asserted that it would cost defendants a substantial amount to comply.

Taking into account all of the damages alleged by plaintiff in the original Complaint, as well as the estimated class size, the Court finds that the value of the relief sought met the jurisdictional threshold CAFA establishes.  When plaintiff filed the Complaint, he had a good faith belief that the scope of damages alleged would exceed the jurisdictional minimum, and

while the damages narrowed as the case progressed, the ultimate value of the case is not the

metric that matters.  The Court finds that plaintiff sufficiently alleged an amount in controversy

that exceeds CAFA's jurisdictional requirement, so the Court concludes that it has subject matter

jurisdiction over this action.[3]

## II.      Final Settlement Class Certification

As noted above, the Court already certified a substantially similar class before the parties

agreed to settle.  Doc. 157 at 6.  And the Court approved preliminary the settlement class of

which the parties seek final certification now.  Doc. 184 at 3–4, 5.  In reaching the decision to

grant preliminary approval, the Court scrutinized thoroughly the proposed class and proposed

settlement agreement.  For the reasons explained in the Court's two previous orders certifying

the same or a similar class, the Court grants plaintiff's request for final certification of a

settlement class under Rule 23(b)(3) defined as:

---

[3]       Plaintiff argues that an additional basis for jurisdiction exists here.  Plaintiff asserts that the Court
may exercise supplemental jurisdiction over the class claims because it has subject matter jurisdiction
over Jonathan Nieberding's personal injury claims under 28 U.S.C. § 1332(a).  *See Exxon Mobil Corp. v.
Allapattah Servs.*, Inc., 545 U.S. 546, 549 (2005) (holding that a court may exercise supplemental
jurisdiction over class action claims that are less than the required jurisdictional amount as long as at least
one named plaintiff asserts a claim in excess of the $75,000 jurisdictional amount in the same case or
controversy).  Here, Jonathan Nieberding brought four claims against defendants for personal injuries that
he sustained when the allegedly defective bracket broke and he fell from a second-story deck at his
father's home.  Doc. 1 at ¶¶ 50, 56, 65, 74.  While the original Complaint did not allege specifically that
jurisdiction was based on traditional diversity under 28 U.S.C. § 1332(a), the Complaint alleged that
Jonathan Nieberding and the defendants are citizens of different states and that Jonathan seeks "actual and
punitive damages in excess of the jurisdictional limit" for each of his personal injury claims.  *Id.*  And,
indeed, the parties settled Jonathan's personal injury claims in an amount that exceeds the jurisdictional
threshold.  *See* Doc. 182 at 6 n.3.
         If the Court has original jurisdiction over Jonathan's personal injury claims, the Court may
exercise supplemental jurisdiction over the class claims if they are part of the same case or controversy,
meaning that they "derive from a common nucleus of operative fact."  *United Mine Workers of Am. v.
Gibbs*, 383 U.S. 715, 725 (1966); *see also Price v. Wolford*, 608 F.3d 698, 703 (10th Cir. 2010) (citations
omitted).  Here, the class claims arguably are based on the same factual allegations that Jonathan
Nieberding asserted to support his personal injury claims—that the brackets are defective because they
allegedly broke when Jonathan fell into a railing on the second-story deck of his father's home causing
him to fall and sustain injuries.  Thus, plaintiff argues, even if CAFA did not supply the Court with
subject matter jurisdiction, the Court has supplemental jurisdiction over the class claims.  Because the
Court has decided that subject matter jurisdiction exists under CAFA, it need not decide whether
supplemental jurisdiction exists on this alternative basis.

All individual persons, corporations, partnerships, associations and other entities who, during the period from June 5, 2008 to April 14, 2015, purchased in the State of Kansas directly from Home Depot U.S.A., Inc., one or more guardrail products supplied by Barrette Outdoor Living, Inc., that included the breadloaf style 1291 (white) and/or 1292 (wicker) upper guardrail brackets, including, but not limited to, the following guardrail products:

1. 355602 67.75" TRADITIONAL VINYL RAIL WHITE

2. 515890 4PC VINYL HANDRAIL BRACKET KIT

3. 541400 WILLIAMSBURG PREBUILT HANDRAIL

Excluded from the Settlement Class are those persons who have lawsuits pending against, or who have settled their claims against, any one or more of the Settling Defendants for the same or similar claims as set forth herein, members of the Kansas state judiciary, Settling Defendants, Settling Defendants' employees, any entities in which either Settling Defendants have a controlling interest, and the parents, subsidiaries, affiliates, and their officers and directors of Settling Defendants and the members of their immediate families.

*See* Doc. 157 at 15–16; *see also* Doc. 184 at 5.

### III.   Final Approval of Proposed Settlement Agreement and Plan of Distribution

Fed. R. Civ. P. 23(e) provides that parties may settle, voluntarily dismiss, or compromise the certified class claims only with the Court's approval. The Court may approve a settlement only after conducting a hearing and upon finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As noted above, the Court held a final approval hearing on August 28, 2015. At that hearing, the parties addressed the fairness, reasonableness, and adequacy of the class settlement.

As described in the Court's Memorandum and Order approving the proposed settlement preliminarily (Doc. 184 at 8–9), the settlement agreement requires defendants to pay $350,000 into a common fund which will be used to pay all costs of notice and administration, any fees and costs awarded to plaintiff's counsel, any incentive award to plaintiff, and all claims by class

members.  Each class member who makes a claim will receive a percentage of the "Settlement Fund."  The Settlement Fund consists of the $350,000 total common fund less (1) any expenses for the claims administrator, (2) any court-approved attorneys' fees and costs, and (3) any incentive award to plaintiff.  Each class member who makes a claim will receive a portion of the Settlement Fund based on the following formula:

$$\text{Number of Claimant's Brackets} \times \frac{\text{Settlement Fund}}{\text{Number of all Brackets Claimed}}$$

Plaintiff requests the Court approve the following deductions from the $350,000 common fund:  (1) $73,899.25 to pay the claims administrator for the administrative costs of the settlement; (2) $125,829.42 in attorneys' fees and $35,426.26 in expenses; and (3) $7,000 as an incentive award payable to plaintiff.  After deducting these proposed amounts, the amount remaining in the Settlement Fund for distribution to the class is $107,845.07.  As noted above, the class action administrator has received, as of August 7, 2015, 38 claim forms claiming a total of 262 products or 1,048 brackets.  Using the formula above to determine each class member's portion of the Settlement Fund, each class member will receive about $102.91 per bracket under plaintiff's proposal.

As described in more detail below, the Court approves the amounts requested by plaintiff to pay the claims administrator and to reimburse Class Counsel for expenses.  But the Court is reducing the amount requested for attorneys' fees to $118,587.24 and the incentive award to $3,500, leaving $118,587.25 remaining in the Settlement Fund for distribution to the class.  With that amount in the Settlement Fund, each class member will receive approximately $113.16 per bracket.

The Court concludes that the proposed settlement, with the adjustments made by the Court for the attorneys' fees and incentive award, is fair, reasonable, and adequate.  In reaching

this decision, the Court has considered the four factors established by the Tenth Circuit for analyzing the fairness, reasonableness, and adequacy of a class action settlement:  (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

First, the Court finds that the parties fairly and honestly negotiated the settlement.  The parties represent that they negotiated the settlement in good faith and at an arm's length in a multi-day mediation before David Aemmer, Chief Circuit Mediator for the Tenth Circuit.  The parties reached this settlement after conducting extensive discovery in the case and briefing motions for partial summary judgment and class certification.  Thus, at the time the parties negotiated the settlement, counsel had knowledge of the strengths and weaknesses of their respective clients' cases and the benefits of settling the matter.  This knowledge facilitated fair and honest settlement negotiations.  The Court finds that this first factor weighs in favor of approval.

Second, the Court concludes that this case involves serious questions of law and fact that place the ultimate outcome of the litigation in doubt.  Defendants have denied the allegations asserted in plaintiff's class action claims, and they have appealed the Court's class certification order.  If the Tenth Circuit reverses that order, the class claimants may recover nothing.  Defendants also have filed two motions for partial summary judgment which, if granted, would limit recovery on the class claims.  At this posture, serious questions of law and fact exist and

they project meaningful doubt about the ultimate outcome of the case.  Thus, the second factor weighs in favor of approval.

Third, the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.  As stated above, each class member who has filed a claim will receive a portion of the Settlement Fund which amounts to approximately $113.16 per bracket.  The Court finds this is a reasonable amount considering that, according to plaintiff, the bracket sells at retail for about $2.50.  Also, the proposed settlement provides each class member with a certain recovery now instead of the mere possibility of a future recovery.  And, of course, the class members may recover significantly less than the proposed settlement amount if they cannot establish defendants' liability after litigating the class claims.  Also, the litigation expenses at this stage of the proceeding are significantly less than the expenses the parties expect to incur litigating this case through the class certification appeal, expert discovery, trial, and any post-trial appeals.  Those additional expenses will reduce the value of the class members' recovery.  Thus, the value of the immediate recovery provided by the settlement outweighs the mere possibility of future relief after protracted and expensive litigation.

Fourth, the parties view the settlement as fair and reasonable.  Plaintiff is represented by experienced Class Counsel who view the settlement as a fair one.  Also, the record contains no evidence of collusion or fraud that would call into question the fairness of the settlement.  Moreover, with the settlement, class members are releasing only those claims that arise from their purchase of the bracket, but not any claims for personal injury.  The scope of the released claims is therefore a reasonable one.  The Court finds that the fourth factor weighs in favor of approval.

All four factors favor approval.  As noted above and described in more detail below, the Court is reducing the amounts requested by the plaintiff for attorneys' fees and an incentive award.  With those adjustments to the proposed settlement, the Court grants approval of the settlement.

### IV.    Notice Plan

The Court has reviewed the parties' execution of the Court-approved notice plan (Doc. 187).  As explained in the notice plan, Rule 23(c)(2)(B) requires that, for any class certified under Rule 23(b)(3), the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Rule 23(c)(2)(B) also lists certain information that the notice must state "clearly and concisely . . . in plain, easily understood language":

> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

For the reasons stated in the Court's Memorandum and Order approving the content and form of the long-form notice, the publication notice, and the claim form (Doc. 184 at 14) and the Memorandum and Order granting plaintiff's Motion for Approval of Amended Notice Plan (Doc. 187), the Court concludes that the notice satisfies Rule 23(e)(1)'s requirement that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal" as well as due process requirements.  *See* Doc. 187 at 3–4.

Just before the final approval hearing, the Court identified a typographical error in the long form notice's description of the location for the settlement approval hearing. The Court finds that this error, while not the ideal, is not a material defect in the notice and does not require the Court to withhold approval of the settlement. The long form notice provided the following information about the final approval hearing: "On August 28, 2015, at the hour of 9:00 am at the United States District Court, District of Kansas, 777 S.E. Quincy, Topeka, KS, 66683, a hearing will be held to determine whether the settlement agreement should be approved . . . ." Doc. 190-3 at 7. This is the wrong street address of the federal courthouse where the final approval hearing took place. The courthouse is located at 444 S.E. Quincy, not 777 S.E. Quincy. The incorrect address is also used on the settlement's website. *See* http://www.vinylguardrailsettlement.com/mainpage/CommonlyAskedQuestions.aspx.

The Court finds that this incorrect address does not render the notice insufficient. As stated above, Rule 23(c)(2)(B) lists seven pieces of information that the notice must contain. The time and place for the final approval hearing is not one of the requirements of Rule 23(c)(2)(B). The long form notice here contains each of the seven requirements listed in Rule 23(c)(2)(B), and therefore satisfies the explicit requirements of that rule.

Moreover, the long form notice and the settlement website explain that class members may appear at the final approval hearing and state their opposition to the fairness, reasonableness, and adequacy of the settlement, the reasonableness of the attorneys' fees and expenses requested, or any other matter to be considered by the Court provided, however, that the class members already have submitted a written notice of the objection to the class action administrator, with corresponding service on counsel for all parties, on or before July 31, 2015. Doc. 190-3 at 7. As of August 7, 2015, the class action administrator had received no objections

14

or exclusions from class members.  Doc. 190-1 at ¶ 12.  At the final approval hearing on August 28, 2015, all counsel represented that they had not received any objections from class members nor were they aware of any objections.  Therefore, no class member had satisfied the prerequisites for appearing and speaking at the hearing because no class member complied with the written notice requirements for lodging an objection.  The best evidence available to the Court favors the conclusion that the error did not prejudice any dissonant class member.

In addition, the Court finds that the error is a slight one.  The incorrect address listed on the notice and the settlement website is just three blocks from the courthouse.  No building exists at 777 S.E. Quincy, and any confused class member could have discerned the address for the courthouse after minimal inquiry.  To the extent any class member was confused by the incorrect address, that person could have called the toll-free number listed on the notice or contacted the claims administrator, any of the counsel listed in the notice, or even the Court to confirm the location of the final approval hearing.  *See Arnett v. Bank of Am., N.A.*, No. 3:11–cv–1372–SI, 2014 WL 4672458, at *3 n.7 (D. Or. Sept. 18, 2014) (concluding that a typographical error in the class notice stating that the hearing date was Friday, September 9, 2014, instead of Tuesday, September 9, 2014, "did not render the Class Notice insufficient because any Class Member who may have been confused about the date of the hearing could confirm the date by calling the toll-free number, visiting the settlement website, or contacting the Court.").

In sum, the Court finds that this error does not materially reduce the quality of the notice received by the class members and does not warrant the cost of an additional round of notice to the class members.  *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 295 n.16 (E.D. Pa. 2012) (holding that an inadvertent typo listing the end date for the class period did not render the notice insufficient because it would not have prevented putative class members from

failing to understand the terms of the settlement agreement or from opting out or objecting to the agreement).  The Court thus concludes that the notice provided to the class satisfied the requirements of Rule 23 and due process.

**V.     Attorneys' Fees, Litigation Expenses and Costs, Named Representative Incentive Award**

Class Counsel seeks (1) a fee award of $125,829.42, which represents 40 percent of the total common fund less litigation expenses; (2) litigation expenses of $35,426.46; and (3) an incentive award of $7,000 to the class representative, Frederick Nieberding.  The Court addresses each of these requests in turn below.

**a.  Attorneys' Fees**

In a diversity case, as this one is, attorney fees are a substantive matter controlled by state law.  *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008); *see also Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2013 WL 1151264, at *4 (D. Kan. Mar. 19, 2013) (applying Kansas law to attorneys' fees request in a class action settlement where the Court had diversity jurisdiction over plaintiffs' Kansas law claims); *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 5306260, at *7 (D. Kan. Oct. 26, 2012) (same).

In Kansas, an attorney who recovers a common fund in a class action has the right to recover a reasonable fee from the fund as a whole.  *Gigot v. Cities Serv. Oil Co.*, 737 P.2d 18, 24 (Kan. 1987); *Freebird, Inc. v. Cimarex Energy Co.*, 264 P.3d 500, 508 (Kan. Ct. App. 2011). The following factors guide the Court's discretion in deciding the reasonableness of an attorneys' fee award in a class action lawsuit involving a common fund:

1. the number of hours spent on the case by the attorney and how those hours were spent;
2. the reasonable hourly rate for the attorney;
3. the contingent nature of success;

16

4. whether the attorney's quality of work should increase or decrease the amount that the attorney should be reasonably entitled to;

5. the amount involved, which determines the client's risk and the attorney's responsibility;

6. the result of the case, which determines the true benefit to the client; and

7. the benefit that the lawsuit produced.

*Freebird*, 264 P.3d at 508 (citing *Shutts v. Phillips Petroleum Co.*, 679 P.2d 1159, 1182 (Kan. 1984), *aff'd in part*, *rev'd in part on other grounds*, 472 U.S. 797 (1985)).  In addition, the Court should consider the factors listed in Kansas Rule of Professional Conduct ("KRPC") 1.5(a) to assess the reasonableness of attorneys' fees.  *Id.*; *Snider v. Am. Family Mut. Ins. Co.*, 298 P.3d 1120, 1129 (Kan. 2013).  Those eight factors are:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent."

*Snider*, 298 P.3d at 1129 (quoting KRPC 1.5.(a)).  "[N]o one factor creates a presumption that controls unless and until it is rebutted by one or more of the other factors."  *Id.* (citing *Johnson v. Westhoff Sand Co. Inc.*, 135 P.3d 1127, 1142 (Kan. 2006)).

Class Counsel requests $125,829.42 in fees, or 40 percent of the common fund after expenses.  After considering the *Shutts* and KRPC factors listed above, the Court finds that a reduced amount of $118,587.24, which amounts to about one third of the total common fund (the $350,000) and one half of the Settlement Fund,[4] is a reasonable and appropriate attorneys' fees

---

[4]    The term "Settlement Fund" refers to the $350,000 common fund less the administrative costs of the settlement (including the fee of the claims administrator), attorneys' fees and expenses actually awarded by this Memorandum and Order, and the reduced incentive award.  *See* Part III, *supra*.

award. *See Freebird, Inc.*, 2013 WL 1151264, at *5 (awarding attorneys' fees equaling 31 percent of the total value of the settlement); *Hershey*, 2012 WL 5306260, at *7–8 (awarding attorneys' fees equaling one third of the total settlement amount).

The factors listed above support a fee award of this dimension because Class Counsel spent significant time litigating this case through discovery, the class certification and partial summary judgment briefing, and settlement. Andrew Schermerhorn, one of the attorneys representing the plaintiff class in this action, recorded 506 hours of time to this lawsuit. Mr. Schermerhorn's hourly rate is between $250 and $300 per hour. Therefore, the fee award is less than the time recorded at Mr. Schermerhorn's hourly rate. And this calculation does not include the time spent by other attorneys representing the plaintiff class in this case.

Moreover, this case involved difficult and novel legal issues, as noted above. Class Counsel is experienced in litigating class actions and used those skills to defeat motions to dismiss, obtain the class certification, and negotiate a settlement of the case. Class Counsel took this case on a contingent fee arrangement, which also supports the fee award. As plaintiff notes, class actions typically involve a contingent fee arrangement because it insulates the class from the risk of incurring legal fees and shifts that risk to counsel. *See Freebird, Inc.*, 2013 WL 1151264, at *4 ("The contingent fee nature of the representation . . . supports the requested award [because it] shifts the risk of loss from plaintiff to plaintiff's counsel."). This fee award represents less than the privately negotiated bargain between plaintiff and the attorneys who the Court eventually appointed as Class Counsel. That agreement called for a 45 percent contingent fee. And while this bargain does not bind the Court or the other members of the class, it provides some market context suggesting that a fee award in this range is a reasonable one. The fee award is about one third of the common fund, well within the range typically awarded in

class actions.  *See Gigot*, 737 P.2d at 319 ("[C]ourts have traditionally 'awarded fees in the 20%-50% range in class actions.'") (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 794 (S.D.N.Y. 1985).

But while the requested fee award represents one plausible outcome, the Court is concerned that the $125,829.42 sought by Class Counsel actually exceeds the $107,845.07 that such an award leaves for distribution to the class members.  The market demands all attorneys to assess and reassess the value of a case and calibrate their efforts proportionally.  And while neither the market nor the Court requires precision in these assessments, a fee award here that exceeds the benefit received by those who own the claim asks too much.

Therefore, the Court determines that its duty to award a reasonable fee requires it to equalize the amount of the fee award with the amount left for distribution to class members.  By doing so, the attorneys and the class will obtain the same recovery, and each class member will receive the additional benefit of recovering approximately $113.16 per bracket (instead of $102.91 per bracket under Class Counsel's proposed distribution).  The Court thus approves an attorneys' fee award of $118,587.24, leaving $118,587.25 remaining in the Settlement Fund for distribution to the class.  The Court finds that this is a reasonable recovery of attorneys' fees in this class action.

### b.  Litigation Expenses and Costs

Class Counsel seeks $35,426.26 as reimbursement for expenses incurred in litigating the class claims in this case.  Class Counsel represents that the requested amount does not include any expenses incurred prosecuting Jonathan Nieberding's personal injury claims.  Class Counsel has submitted a summary of expenses (Doc. 190-2 at 6, 17–21), which the Court has reviewed

and finds reasonable.  The Court thus approves Class Counsel's request for recovery of $35,426.26 in expenses.

### c. Class Representative Incentive Award

Finally, Class Counsel requests a $7,000 incentive fee award for the class representative Frederick Nieberding.  Class Counsel contends that plaintiff's initiation of the action, his guidance and assistance to counsel in prosecuting the action, and his maintenance of his second-story deck in a defective condition justify the amount sought as an incentive award.

An incentive award "perform[s] the legitimate function of encouraging individuals to undertake the frequently onerous responsibility of [serving as the] named class representative." *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 5306260, at *12 (D. Kan. Oct. 26, 2012) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722–23 (7th Cir. 2001)).  Courts should use caution when granting requests for incentive awards, but they are appropriate in certain actions. *Id.* (citing *In re Synthroid*, 264 F.3d at 722–23).

In determining the appropriateness of an incentive award to a class representative, the Court should consider the following three factors:  (1) the actions the class representative took to protect the interests of the class; (2) the level of benefit that the class received from the class representative's actions; and (3) the quantity of time and effort the class representative spent in pursuing the litigation. *Freebird, Inc. v. Cimarex Energy Co.*, 264 P.3d 500, 645 (Kan. Ct. App. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, plaintiff's request for $7,000 as an incentive award amounts to two percent of the common fund.  Considering the factors listed by the Kansas Court of Appeals in *Freebird*, the Court agrees that plaintiff's actions to help prosecute the class claims and the result he helped to

obtain for the class merit some recovery of an incentive award.  The record shows that plaintiff assisted counsel with discovery responses, gave a deposition, and maintained his deck in a defective condition thereby losing the benefit of its use for several years.  But the Court also finds that an award of $3,500, or one percent of the common fund, is a more appropriate measurement of plaintiff's effort for the class.  It is more in line with other cases decided by our Court and other courts who have applied Kansas law to common fund cases.  *See Freebird, Inc.*, 264 P.3d at 646 (upholding an incentive award of $35,400, or one percent of the common fund, as a reasonable amount based on the 700 hours that the class representative spent working on the lawsuit); *see also Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2013 WL 1151264, at *5 (D. Kan. Mar. 19, 2013) (granting plaintiff's request for an incentive award of $48,923.45, or three-fifths of one percent of the common fund, because she had devoted more than 1,500 hours to the case over the last five years of litigation); *Hershey*, 2012 WL 5306260, at *12 (granting plaintiff's request for an incentive award that was one tenth of one percent of the total settlement based on his efforts as the class representative).  The Court is mindful that the settlement achieved here is smaller than those in the cited cases, and thus produces a higher ratio.  But the Court also notes that Mr. Nieberding did not keep track of his time or even provide an estimate of the actual hours consumed by his efforts in the case.  Thus, the Court cannot assume that he made the same degree of commitment as the class representatives made in those other cases.  In this respect, he is a less appealing candidate for an incentive award.

Finally, the Court also notes that the incentive award here will be paid out of the common fund, thereby reducing the amount available to each class member in the Settlement Fund.  This fact supports the reduction of plaintiff's incentive award to $3,500 because it makes available

additional funds to the class members and provides a greater level of benefit to the class as a whole.

## VI.    Conclusion

For the reasons explained above, the Court grants in part the Representative Plaintiff's Motion for Final Approval of Class-Action Settlement and Application for Award of Attorneys' Fees and Expenses (Doc. 189).  The Court approves the class action settlement establishing a common fund of $350,000, and awards the following:  (1) $118,587.24 to Class Counsel in attorneys' fees; (2) $3,500 to the representative plaintiff, Frederick Nieberding, as an incentive award; (3) $35,426.26 to Class Counsel for litigation expenses; and (4) $73,899.25 to Rust Consulting, Inc., the claims administrator, for claim administration expenses.  The Court also will enter a final order of judgment memorializing these outcomes and the conclusion of the case.

**IT IS SO ORDERED.**

**Dated this 11th day of September, 2015, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**